### William L. Prather et al. v. Peter McClelland, Jr.
#### No. 2927.

1. **Evidence—Probate of Will.**—Revised Statutes, article 1855, provides: "A certified copy of such record of testimony may be read in evidence on the trial of the same matter in any other court when taken there by appeal or otherwise." A contest of the probate of a will having been removed to the District Court, the testimony taken in the Probate Court is competent evidence in the District Court, and the right to have the witness placed upon the stand and to be subjected to cross-examination is not conceded.

2.  **Independent Executor.**—The provision in a will that no other action shall be had in the Probate Court than the probate, record, and inventory (Rev. Stats., art. 1942) does not deprive such court of power to annul the will under proceedings as in articles 1938, 1939, 1940, and 1941.

3.  **Probate Practice—Construction of Will.**—The proceedings to annul the will in whole or in part provided for in articles 1938 to 1941 are separate and distinct proceedings after the will has been probated. It is error to join such proceedings with a contest resisting the probate of the will.

4.  **Will—Insane Delusions—Charge.**—See instructions approved in a contest of a will involving want of mental capacity, and insane delusions affecting the testator.

5.  **Same—Practice.**—What constitutes *insane delusion*, and its effect upon the testamentary capacity, are questions of law.  Whether or not the testator came within the definition is a question of fact, to be found by the jury from the evidence.

6.  **Same—Character of Executors may be Shown.**—It seems that the disposition made of the property, as well as the character and circumstances of the persons appointed to execute the will, may be proper subjects of examination and proof.

7.  **Cross-Examination.**—It is questionable whether a witness who on direct examination had testified to the sufficient mental capacity of the testator, on cross-examination could properly be asked whether he thought the testator "was in a condition to make a $50,000 trade."  And it was error to allow such witness to answer "that he would not be willing to trust him to make such a trade for him."

8.  **Res Gestæ—Remarks Touching Mental Condition.**—A remark made immediately before the signing of the will, made by the testator's wife, questioning his mental capacity, is incompetent upon the issue of the mental capacity of the testator.

9.  **Opinion, Hypothetical—False Assumption.**—A medical man testifying as an expert was asked his opinion upon an hypothesis made by collecting the facts in evidence upon the mental condition of the testator.  On cross-examination witness was asked if, in addition, the "man takes charge of all his wife's estate, wills it away in this condition, and then several days after forgets what provision he had made for his wife, he having limited her to $150 per month the balance of her lifetime, do you think he was in a condition to make a will?"  The answer of the witness was, "I should not think that this would indicate it."  There was nothing in the evidence tending to show that the testator had "willed away all of his wife's estate."  *Held*, that the question and answer should have been excluded.

APPEAL from McLennan.  Tried below before Hon. Eugene Williams.

The controversy in this case originated in an application filed in the County Court of McLennan County by appellants to probate the will and codicil thereto of Peter McClelland, Sr., who died on September 24, 1886. The will is dated October 22, 1881, and the codicil August 17, 1886, and they provide that no other action shall be had in the County Court in relation to the settlement of the estate than the probate of the will and the return of an inventory, appraisement, and list of claims, and appellants are appointed executors by the codicil.  McClelland left a widow and one child only.  After giving them certain legacies in fee, and making provision for their maintenance and support, the will and codicil puts the bulk of the estate in the hands of his executors as trustees, to be held and managed by them on certain specified trusts.

Peter McClelland, Jr., the only child, opposed the probate of the will and codicil on the ground that his father was not of sound mind or capa-

ble of making the codicil at the time that the codicil was executed, and he also asked that the trust provisions of the will be set aside and held for naught, because they were contrary to public policy and void.

The County Court ruled that the deceased was of sound mind and capable of making the will and codicil, and admitted them to probate, but set aside the trust provisions of the will as contrary to public policy and void.

. Appellants took to the District Court for revision by certiorari so much of the judgment of the County Court as attempted to annul the trust provision of the will, and asked that it be set aside on the ground that the County Court could not consider that issue in a proceeding to probate, and on the ground that the County Court had no jurisdiction over the matter, the will being an independent one, and because the provisions were lawful. These objecions were also urged in the County Court.

Afterward the appellee removed the whole case to the District Court by appeal, and it was docketed as a separate suit.

In the District Court appellee moved that these two cases be consolidated and tried together, which appellants opposed on the ground that they did not involve causes of action which could be joined, mainly for the reasons stated above. The court overruled these objections and consolidated the two cases, and they were tried together.

The district judge held that the trust provisions of the will were lawful, and submitted to the jury the question of whether or not the testator was mentally capable of making the will and codicil when they were executed. The jury found that he was capable when the will was executed, and incapable when the codicil was executed, and judgment was rendered accordingly. This appeal is taken from that judgment.

It is contended here that the court erred in consolidating said two cases and trying them together; in entertaining jurisdiction to consider the legality of the trust provisions of the will in the proceeding to probate; in giving and refusing certain charges, and in admitting and excluding certain evidence relating to the mental capacity of the testator; in overruling the motion for a new trial and entering up judgment on the verdict. It is also contended that the verdict of the jury is contrary to and not supported by the evidence. (This is from appellants' brief.)

*Seth Shepard, E. H. Graham,* and *Prather & Lindsay,* for appellants.
1. The court erred in consolidating the two cases, William L. Prather and John E. Gilbert, executors, v. Peter McClelland, Jr., with case No. 4505, entitled *In re* Probate of the Will of Peter McClelland, deceased, because they are not causes of action which may be joined and are not suits which may be consolidated under the statute.

The two cases must be "for causes of action which may be joined." Rev. Stats., art. 1450; Raymond v. Cook, 31 Texas, 382.

Nothing to be tried on certiorari except things complained of. Rev. Stats., art. 297.

The statute provides a remedy for construing a will after probate, and no other admissible. Rev. Stats., arts. 1938, 1941; Sedg. on Stats., pp. 30, 31; Dwarris on Stats., p. 228.

The will can not be construed on proceeding to probate. Rev. Stats., arts. 1831, 1851; 3 Redf., pp. 57, *42, 60, 61, *52, 53; 1 Jarm., pp. *21, 24; Larieux v. Keller, 68 Am. Dec., 699; Estate of Mary Cobb, 49 Cal., 600; Evans v. Anderson, 15 Ohio St., 326; Fallon v. Chidester, 26 Am. Rep., 167; McLaughlin's Will, 1 Tuck., 79; Layton's Will, Id., 301.

The will is independent, and the County Court had no jurisdiction to construe it. Rev. Stats., art. 1942; Runnels v. Runnels, 27 Texas, 521; McLane v. Belvin, 47 Texas, 493; Holmes v. Johns, 56 Texas, 51; Lumpkin v. Smith, 62 Texas, 251; Jerrard v. McKenzie, 61 Texas, 40.

As the court *a quo* had no jurisdiction, the District Court had none on appeal. Timmins v. Bonner, 58 Texas, 562; Wadsworth v. Chick, 55 Texas, 242; Bradley v. Love, 60 Texas, 476; Vance v. Upson, 64 Texas, 268.

2. The court erred in overruling plaintiffs' demurrers to that part of contestant's opposition to the probate of the will and codicil which seeks to have the will and codicil construed and the trust provisions in them set aside as contrary to public policy and void, for the reason that such action could not be taken or relief had in the proceeding to probate, and because neither the County Court nor the District Court on appeal had any jurisdiction to take such action, inasmuch as the will and codicil is an independent one.

3. Charges given and refused.

(1) "The strength of mind must be equal to the purpose to which it is applied," and no more. Garrison v. Blanton, 48 Texas, 302; 1 Redf. on Wills, pp. 102, 124, 125, 128, 129, and note.

(2) What is insane delusion. Schoul. on Wills, 144 (note), 146–54; 1 Redf. on Wills, *71, 72, *76, 77, *86, 87; Turnbull v. Gibbons, 51 Am. Dec., 258; Clapp v. Fullerton, 90 Am. Dec., 685.

(3) It is different from prejudice or error. Schoul. on Wills, 162, 163.

4. The court erred in allowing the contestant to read in evidence the written testimony of John Johnson and Charles Applequest, taken in the County Court; and it further erred in refusing to allow plaintiffs to further cross-examine them as contestant's witnesses. Randall v. Collins, 52 Texas, 435; McClure v. Sheek's Heirs, 68 Texas, 429.

5. Upon rulings of the trial judge in admitting evidence.

(1) Character, etc., of persons named as executors. Rev. Stats., art. 1857.

(2) Remarks of the wife upon testator's mental condition. Schwarzhoff v. Nicker, 1 Posey's U. C., 328; Kottwitz v. Bagby, 16 Texas, 656;

Thurmond v. Trammell, 22 Texas, 258; Ross v. Kornrumpf, 64 Texas, 395; 1 Whart. Ev., 172; 1 Greenl., 124.

(3) Assuming false hypothesis on cross-examining witness giving an opinion as an expert. Vance v. Upson, 66 Texas, 489; Abb. Trial Ev., 117; 1 Whart. Ev., 452; Sanchez v. The People, 22 N. Y., 154; Muldowney v. Railway, 39 Ia., 622.

6. The verdict is contrary to the law and evidence.

(1) Mental capacity required, etc. *a.* What required. Garrison v. Blanton, 48 Texas, 302; 1 Redf. on Wills, 102, 124, 125, 127–29, note; Schoul. on Wills, secs. 70–73, 80, 134, 135, 186; Potter v. House, 50 Am. Dec., 346; St. Leger's Appeal, 91 Am. Dec., 739; In re Glockner's Will, 2 N. Y., 97.

Recollecting former instructions, etc. 1 Redf. on Wills, 131–33; Schoul. on Wills, 73, 138; Tompkins v. Tompkins, 19 Am. Dec., 658.

In conformity with long fixed intentions, old persons, etc. Couch v. Couch, 42 Am. Dec. (7 Ala.), 602.

Unjust Wills. Schoul. on Wills, secs. 77, 162, 163, 165.

Less required to make a codicil. 1 Redf. on Wills, 128, 129, note 33.

*b.* Comparative value of testimony as to. Attending physicians, greatest. Schoul. on Wills, secs. 183, 196, 204, 209.

Subscribing witnesses, next. Schoul. on Wills, secs. 209 (note 1), 178, 198, 181 (note 2), 182.

General witnesses, next. Schoul. on Wills, secs. 133, 142.

Expert witnesses, least of all. Schoul. on Wills, 213, 207, 211; Redf. on Wills, 154, 155.

(2) Insane delusion, what is. Schoul. on Wills, secs. 144, 147, 146, 153, 454; Redf. on Wills, *71, 72, *86, 87; Trumbull v. Gibbons, 51 Am. Dec., 258; Clapp v. Fullerton, 90 Am. Dec., 685.

Distinguished from eccentricity, prejudice, and error. Schoul. on Wills, 145, 162 (note 1), 163; Jarm. on Wills, p. 73.

Extreme cases not insane delusions. Trumbull v. Gibbons, 51 Am. Dec., 258; Clapp v. Fullerton, 90 Am. Dec., 685; Potts v. House, 50 Am. Dec., 329.

(3) New trial. Railway v. Casey, 52 Texas, 122; Railway v. Schmidt, 61 Texas, 285.

*Clark, Dyer & Bolinger,* for appellee. — 1. The action of the court in consolidating suits Nos. 4497 and 4505 is not revisable in the absence of a showing by the complaining party that the consolidation deprived him of some right or seriously prejudiced his cause, which showing is not made by the record. Rev. Stats., art. 1450; Young v. Gray, 65 Texas, 99; Harle v. Langdon, 60 Texas, 555; Castro v. Whitlock, 15 Texas, 437.

2. Upon the application to probate the will of Peter McClelland the County Court had general jurisdiction of the subject matter and of the

parties, and it was competent for said court upon the application of the contestant (appellee) to annul in that proceeding any provision of said will found void. Under our statutes appellee had the right to contest the validity of any provision of the will and have it decided by the court, without awaiting probate and afterwards invoking the action of the same court in a proceeding under the statute. Rev. Stats., 1818, 1938–41, 1789; Martin v. Robinson, 67 Texas, 368, and authorities; Franks v. Chapman, 61 Texas, 576.

3.   The charge of the court as to the relative mental capacity to make a will and a codicil was strictly accurate, and the refusal to give the charge asked by appellants upon the subject was correct, because said charge was not the law, and if given would have furnished the jury no idea of what was meant by changing the will in "a few plain particulars," would have invaded the province of the jury, and been subject to construction by the jury that it would require a very low order of mental capacity to make the particular codicil in issue.

4.   "Insane delusion" was a material issue arising upon the evidence, and the charge of the court was the law applicable to the issue. Appellants asked an elaborate instruction upon "insane delusion," which was given by the court. Browne on Insanity, secs. 148, 149; 1 Redf. on Wills, pp. 73, 79, 82; 1 Jarm. on Wills, pp. 100, 101, and notes; Clark v. Fisher, 19 Am. Dec., 402; Lucus v. Parsons, 71 Am. Dec., 151; Riggs v. Am. Tract Society, 95 N. Y., 503.

5.   The declaration of Mrs. McClelland made at the time the codicil was in course of execution constituted a part of the transaction and was admissible as a constituent thereof. 1 Sayles' Civ. Stats., pp. 713 (Rule 34 and authorities cited), 717; 1 Greenl., sec. 108; 1 Whart. on Ev., secs. 258–60; Gillam v. Sigman, 29 Cal., 638.

6.   The verdict is sustained by the testimony. Reid v. Roberts, 71 Am. Dec., 210; Reynolds v. Reynolds, 40 Am. Dec., 599; Scribner v. Crane, 2 Paige, 147, 149; 1 Redf. on Wills, pp. 94–97, *et seq.*

As to relative opinions of physicians and neighbors. Rutherford v. Morris, 77 Ill., 405; Wheeler v. Walker, 34 Ala., 469; 1 Redf. on Wills, 4 ed., p. 154; Laws. on Ex. and Opin. Ev., p. 164, *et. seq.;* Clark v. The State, 40 Am. Dec., 481.

As to capacity. Garrison v. Blanton, 48 Texas, 299; Vance v. Upson, 66 Texas, 476.

In Marsh v. Tyrrell, 2 Flagg, 122, it is said: "It is a great but not uncommon error to suppose that because a person can understand a question put to him, and can give a rational answer to such question, he is of perfectly sound mind, and is capable of making a will for any purpose whatever; whereas, the rule of law, and it is the rule of common sense, is far otherwise; the competency of the mind must be judged by the nature

of the act to be done, from a consideration of all the circumstances of the case." 25 N. Y., 23, 24.

No difference between subscribing witnesses and other witnesses. 1 Redf. on Wills, 4 ed., p. 145, and note.

Rule in cases of unjust or unnatural wills. 1 Redf. on Wills, 4 ed., p. 515, sec. 14; Kevil v. Kevil, 6 Am. Law Reg., p. 80, note by Redfield; Clark v. Fisher, 1 Paige, 171.

HENRY, Associate Justice.—Appellants commenced this suit in the County Court by an application to probate the will and a codicil thereto of Peter McClelland, Sr., and for the issuance of letters to themselves as executors.

Appellee, who is the only child of said Peter McClelland, Sr., opposed the probate of the will and codicil on the ground of the want of testamentary capacity in his father when they were executed, and prayed the court to annul and vacate all provisions of the will and codicil which, if probate should be granted, would interfere in any manner with the full and absolute enjoyment of the estate given to him.

Appellants demurred on the ground that the court had no authority to declare any of the provisions of the will invalid until after it was admitted to probate. The court overruled the demurrer.

The County Court admitted to probate both the will and the codicil, but ordered " that each and every provision of the will and codicil which provides that the residue of said estate shall be received and enjoyed by the devisee, Peter McClelland, Jr., only *in futuro,* and that said executors shall hold, control, and manage said estate in trust for twenty-five years from and after the death of said testator before the same shall be turned over to said devisee, or which provides or attempts to provide that said executors shall hold and manage said estate in trust for said devisee during his natural life, or which directs that the executors shall take the rents, income, and profits of the estate for the period of twenty-five years, or during the natural life of Peter McClelland, Jr., and invest the same from time to time in other property, and all other restraints and limitations upon the use and enjoyment of said estate by the residuary devisee and legatee, Peter McClelland, Jr., be null, void, and inoperative, and shall not hereafter constitute any part of said will or codicil."

Appellants took to the District Court by certiorari for revision so much of the judgment as annulled provisions of the will. Afterwards the contestant removed by appeal the whole case to the District Court, and the appeal was there docketed as a separate suit.

In the District Court, on the motion of appellee, and over the opposition of appellants, the two proceedings were consolidated, and the contest was subsequently conducted as one suit.

The effect of the charge of the court was to withdraw from the jury

the issue as to the construction and effect of the will, and to submit to them only the issues as to the execution of the will and codicil, and mental capacity of the testator.

The jury found that the testator was of sound mind on the 22d day of October, 1881, when the will was executed, and of unsound mind on the 17th day of August, 1886, when he signed the codicil, and that the codicil should be set aside.

The court entered judgment in pursuance of the verdict, establishing the will and refusing to establish the codicil.

The contestant, upon the return of the verdict, filed a motion to have entered in his favor a decree upon the verdict, setting aside each and every provision of the will depriving him of the immediate use and enjoyment of the estate devised to him, and directing it to be turned over to him upon his paying or giving bond for the payment of the debts of the estate.

This motion was overruled by the court.

On the trial in the District Court the evidence of two witnesses in the trial in the County Court, and there reduced to writing, was read by the contestant. The proponents of the will objected to the evidence on the ground that the witnesses were present in the court house and should be examined orally. After the written evidence had been read the proponents requested the court to allow them to cross-examine the witnesses, treating them as contestant's witnesses. The court refused the request.

The introduction of the written evidence was authorized by article 1855 of the Revised Statutes.

The request to be allowed to introduce the witnesses for cross-examination was properly refused.

The will was executed on the 22d day of October, 1881. It gave to the wife of the testator the homestead for the period of her life, and all the household and kitchen furniture, plate, table ware, pictures, ornaments, and other personal property used in and about said homestead, and the carriage, horses, milk cows, and also the sum of $150 per month, or so much thereof as she might see fit to use, during her life, to be paid to her in monthly installments by the testator's executors.

The provisions with regard to his son Peter and the executors of the will are as follows:

"Item 4. I give and bequeath to my beloved son Peter McClelland, Junior, should he survive me, all the residue of my estate, real, personal, and mixed, to be received, however, and enjoyed by him only *in futuro,* upon the terms, conditions, encumbrances, trusts, and stipulations herein provided for, which said estate shall be held by my executors, controlled and managed as herein provided, in trust for my said son Peter for twenty-five years from and after my death before the same shall be turned over to my said son, except such provisions and legacies as are herein made

for the support and maintenance of my said son during the said period of twenty-five years, should he live so long.

"Item 5. I also give and bequeath to my said son Peter $100 per month, to be paid to him from and after the date of my death, in cash, for his maintenance and support, in monthly installments, so long as he shall remain single or until he shall come into possession of my estate as herein provided; but should my said son marry before or after my death, this special legacy shall be increased to $150 per month from and after the date of such marriage, to be paid to him in cash in monthly installments, for his maintenance and support after my death, by my executors, as herein provided, which shall be a charge upon my estate until he comes into possession of the same as herein provided, or dies; and in case of such marriage my executors shall provide, by purchase or otherwise, for my said son Peter, out of my estate, a suitable house for him to live in, including lots, grounds, and out buildings, without charge to him, not to exceed in value the sum of $5000, if purchased by my said executors for his use and enjoyment; but upon the death of my said wife Joanna, my said son Peter, first having so married, may, at his option, move into, live at, and enjoy the homestead bequeathed to her during her life, free of charge, in lieu of any other provision for a home, until he shall come into the possession of my estate according to the provisions of this will.

"Item 6. I hereby appoint John E. Gilbert, Charles F. Gilbert, and Amos W. Gilbert, citizens of the county of McLennan and State of Texas, my executors to carry out the terms and execute the trusts provided for in this will, and as I repose full confidence in their honesty, fidelity, and ability, I desire that no bond shall be required of them. Should any one of my said executors leave the State of Texas and remain away for more than two years at one time, he shall thereupon be disqualified from further acting as such executor. * * *

"Item 7. Upon my death it is my desire that my said executors or either of them have this will probated in due form of law, and that they or either of them have a full and complete inventory and appraisement of my estate returned into court according to law, and that the same be recorded, and that no further action be had in the County Court in reference to my estate except as herein provided. * * *

"Item 8. Upon my death, and after the probate of this will as aforesaid, my said executors accepting and qualified to act as aforesaid are hereby authorized and empowered to take possession of my entire estate, whether in money, real estate, personal, or mixed, and the same to keep and hold in their possession and care, upon the trusts, terms, and conditions herein provided for, for the full period of twenty-five years after my death, should my son Peter live so long; and at the expiration of said twenty-five years my said executors shall turn over to my said son Peter, if living, the entire residue of my estate, whether money, real, personal,

or mixed, with the increase and accretions to the same, as provided for herein, after paying the charges of every kind and legacies herein provided for out of the same; but should my son Peter die before the expiration of said period of twenty-five years after my death, or before I do, then it is my desire that said trusts shall end, and that my heirs at law shall take my estate, clear of the trusts, charges, and encumbrances herein created, according to the laws of the State of Texas, and that my executors turn the same over to them, charged, however, with the bequests to my wife, if living."

The codicil was executed on the 17th day of August, 1886, and contained the following provisions:

"2. And I now here revoke item seventh of my said will, and in lieu thereof I desire upon my death that my said executors or either of them have my said will probated in due form of law, and that they or either of them have a full and complete inventory and appraisement of my said estate returned into court according to law, and that the same be recorded, and that no further action be had in the County Court in reference to my estate except as provided in said will or herein; and this codicil now here is made a part of said will as fully as if it had been originally incorporated therein. Upon a further consideration I desire after my death and the death of my wife that my son Peter McClelland may occupy and enjoy my homestead if he chooses so to do, but upon the condition that he first convey back to my estate the homestead I have given him on Hogan Hill; in case he does not do so, then my homestead upon the death of my wife shall pass to the possession of my executors, to be administered as provided for the balance of my estate. I further desire to continue the trusts created herein in my executors for and during the natural life of my said son Peter, but if in their judgment he is provident and careful they may make such advances out of the estate as they may think right and proper over and above the provisions made herein for him and in said will."

It also revoked the clause of the will appointing executors and reappointed John E. Gilbert and substituted W. L. Prather for the other two.

It is contended the District Court committed error in consolidating the proceeding by certiorari with the appeal, and also "in overruling plaintiffs' demurrers to that part of contestant's opposition to the probate of the will and codicil which seeks to have said will and codicil construed, and to have certain provisions of the will and codicil set aside as contrary to public policy and void, on the ground that such action could not be taken or relief had in any case in a proceeding to probate a will; and in this case neither the County Court nor the District Court on appeal had any jurisdiction to take such action, because the will and codicil is an independent one and provides that no other action shall be had in the County Court relative to the settlement of the testator's estate than the

probating and recording his will and return of inventory, appraisement, and list of claims."

This question is, we think, controlled by the following provisions of the Revised Statutes:

"Art. 1938. When a will has been probated its provisions and directions shall be executed, unless the same are annulled or suspended by order of the court probating the same in a proceeding instituted for that purpose by some person interested in the estate.

"Art. 1939. Such proceedings shall be by application in writing, filed with the clerk of the court, setting forth the provisions and directions in the will that are objected to, and the grounds of the objection.

"Art. 1940. Upon the filing of such application the clerk shall issue a citation for the executor or administrator with the will annexed to appear at a regular term of such court and answer such application, the substance of which application shall be set forth in the citation; and such citation shall further direct such executor or administrator to refrain from executing the provisions and directions in the will that are objected to until such application has been heard and decided by the court."

The proceedings relating to the probate of a will, and what shall be proved to entitle it to probate, are plainly prescribed by other provisions of the statutes. Arts. 1830, 1833, 1836, 1840, 1851, 1854.

That the proceeding to annul some of the provisions of the will attempted in this case to be injected into the proceedings to probate it is required to be commenced and conducted as a separate and distinct proceeding after the will has been probated, is, we think, too clear to require argument or illustration in its support.

If we doubted the wisdom or the policy of the law in requiring the probate proceeding to be tried as a separate and distinct issue from the other, which, however, we do not doubt, we would still be constrained by the unmistakable phraseology of the statute to give them that effect.

Because the two matters should not have been joined in one proceeding, we think the court erred in overruling plaintiffs' exceptions. Independently of that question, there was no error in consolidating in the District Court the certiorari with the appeal proceedings.

We do not think that the independent provision in the will has the effect to deprive the County Court of jurisdiction to entertain a proceeding to annul provisions of the will.

The court charged the jury that:

"2. To find this will or codicil valid the testator must have been of sound mind at its execution, and by this is meant that he must have been capable of understanding the nature of the business he was engaged in, the nature and extent of his property, the persons to whom he meant to devise and bequeath it, the persons dependent upon his bounty, and the mode of distribution among them; that he must have had memory suffi-

cient to collect in his mind the elements of the business to be transacted, and to hold them long enough to perceive at least their obvious relations to each other, and be able to form a reasonable judgment as to them; and that he was not under the influence of an insane delusion, either in regard to his property or the natural and proper objects of his bounty, which affected the disposition he was about to make.

"3. If, however, he had not the qualities and capabilities above enumerated, or if at the date of the will or the date of the codicil he was laboring under an insane delusion, either in regard to his property or the natural and proper objects of his bounty, which affected the disposition he was then attempting to make, or of which delusion the papers were the offspring or fruit, then he was not at such time in a condition to make such will or codicil; and if you find this will or codicil propounded under such circumstances, the instrument, if either, so propounded ought to be set aside, and as to it you will find against the proponents and in favor of the contestant, stating in your verdict plainly which, if either or both, you so find should be set aside.

"4. By insane delusion is meant the belief of a state of supposed facts which no rational person would believe."

"6. Ordinarily less capacity is required to enable a testator to make a will than for the same person to make a contract, or to engage in a struggle with another person in which each is bargaining to secure the best terms, or to engage in intricate and complex business matters, and generally less capacity is required to enable a testator to make a codicil than to make a will, but in every case it is a question of fact for the jury."

The court refused the request of appellants to charge that there was no evidence of insane delusion in the case and that they were not to consider that subject.

In addition to the foregoing charges the court gave to the jury a charge requested by appellants, explaining the law and definition of an insane delusion in its application to the facts of this case, and refused all other charges asked by either party.

The court refused to give the following charges at the request of the appellants:

"5. (1) You are instructed that all the testamentary capacity required of a testator in making a valid will or codicil is that he have sufficient mind to understand what he is doing in making the particular will or codicil he makes, and that there be a will of his own accompanying the act. Though the mental frame may be reduced below the ordinary standard, yet if he have sufficient intelligence to understand the particular will or codicil he makes in its different bearings, the power to make the will or codicil remains. The strength of mind must be simply equal to the purpose to which it is applied, and that is all that is required. So that if you believe from the evidence before you that Peter McClelland, deceased,

had at the time the codicil was executed sufficient mental capacity to comprehend the changes made in his will by the codicil before you, then he had sufficient mental capacity to make the codicil.

"(2)  It takes less mental capacity to make a codicil than to make a will; and if the codicil only changes the will in a few plain particulars, then it requires still less mental capacity to execute such codicil than if the same contained many such changes.

"(3)  All parents have a right to judge and determine as to who are the proper objects of their bounty, and if free from undue influences and insane delusion, and of sufficient mental capacity, may give their property to any person they may choose.  A child has no natural right to the estate of its father which courts of justice can recognize against the will of the father."

Upon the foregoing charges, given and refused, appellants assign the following errors:

"4.  The court erred in giving to the jury part of clause two (2) of its general charge, relating to the mental capacity in a testator necessary to make a will or codicil, in that this part of the charge is too general, not sufficiently full to cover the case before the jury, not applicable to the whole case, and required more mental capacity in the testator than was necessary under the law to make the codicil before the jury, and misled the jury.

"5.  The court erred in refusing to give to the jury charge number five (5) asked by plaintiffs or proponents on the same subject as that complained of in the last assignment, because it presented correct propositions of law applicable to the case before the jury, sought to correct and if given would have corrected the errors in the court's charge on this subject.

"6.  The court erred in giving to the jury so much of part or clause six (6) of its general charge as relates to the relative mental capacity necessary to make a will and codicil, and in refusing to give charge two (2) on the same subject asked by plaintiffs or proponents, because said charge number two (2) sought to apply the general proposition contained in the court's charge to the case before the jury, and was in every way proper in itself, and the court's charge was too abstract, not full enough, and too general and misleading.

"7.  The court erred in giving to the jury part of clause number three (3) of its general charge on the subject of insane delusion, and in refusing to give to the jury charge number one (1) on the same subject asked by plaintiffs or proponents, and in charging the jury on that subject at all, because there was not sufficient evidence of insane delusion before the jury to authorize the court to charge the jury on the question, and the jury was misled by submitting the question to them."

"9.  The court erred in refusing to give to the jury charge number three (3) asked by plaintiffs or proponents, to the effect that Peter McClel-

land, Sr., deceased, had the right to give his estate to whom he pleased, etc., because it presented a correct proposition of law and was necessary to counteract what was so fully and so bitterly said by contestant's counsel before the jury about the unjustness of the testator's will and codicil.

"10.   The court erred in giving to the jury clause number one (1) of its general charge and in refusing to give charge number six (6) asked by plaintiffs or proponents, to the effect that the testator had the right to create the trust that he did by the will and provide for the accumulation of his estate, because contestant sought, by parading before the jury this feature of the will as a great outrage, to prejudice their minds against the will and codicil, and this charge was necessary in a measure to correct this or counteract it, and the court's charge was not full enough on this point."

In view of another trial of the cause, when the evidence on the issue may be different from what it appears in the record now before us, we think it inappropriate to comment on the refusal of the court to charge, as requested by plaintiffs, "that there was no evidence of insane delusion and that the jury should not consider that issue."

What constitutes insane delusion and its effect upon the testamentary capacity are questions of law.   Whether or not the testator came within the definition is a question of fact to be found by the jury from the evidence.   If in the view of the court there shall be no facts in evidence bringing the testator within the embrace of the court's definition or explanation of such a state, the issue should be taken from the jury.

With regard to all other assignments upon charges given and refused, we deem it sufficient to say that we think the charges given were substantially correct, and in so far as the charges refused embraced correct propositions proper to be given, that they were sufficiently embraced in the charges given.

The court, over the objections of appellants, permitted contestant to prove that John E. Gilbert, one of the executors named in the will and codicil, did not then live in Texas; that he had been absent about one year; that he was not a married man; that he came from Ohio to Denison and from there to Waco, and had no property, so far as the knowledge of the witness went; that Charles F. and Amos W. Gilbert, two executors named in the will, left Waco about three years before the trial and then lived on the Pacific slope.

We are not prepared to say that upon the issue of the sanity of the testator the disposition made of his property, as well as the character and circumstances of the persons appointed to execute the will, may not be proper subjects of consideration and proof.   The inquiry is not cut off because the facts, when all are developed, tend to vindicate the fitness and wisdom of the appointment.

The contestant, upon cross-examination of a witness introduced by the

plaintiffs, and who had testified to the sanity of the testator when he executed the codicil, was permitted to ask the witness "whether McClelland was in a condition at that time to make a $50,000 trade," and the witness was permitted to answer "that he would not be willing to trust him to make such a trade for him." Plaintiffs objected to the question and answer.

It was the right of contestant in cross-examining the witness, who had expressed a favorable opinion of the sanity of the testator, to fully test the grounds and extent of the opinion, and the same restrictions upon the introduction of such evidence can not be applied as would be proper upon the direct examination. Under the most liberal application of the rule, however, it is difficult to see that evidence of a witness that he would not willingly trust another to make an important trade for him is calculated to cast light upon the question of such other person having sufficient mental capacity to make a codicil to his own will.

At the instance of contestant a witness was permitted to testify that just before the codicil was executed and when they were preparing for it, one of the witnesses being then inside the room where the testator lay, the other witness was in the act of entering the room when he met the testator's wife coming out of the room; "that she stopped him and remarked to him that she did not think that her husband was in any condition to attend to that kind of business; that this took place a few feet outside of the door, and that he understood the remark to apply to his mental condition."

The evidence was improper and should not have been admitted.

Dr. Halbert, a witness for contestant, being under cross-examination, plaintiffs' counsel "stated such part of the main facts and circumstances attending the execution of the codicil as are shown by the statement of facts, and asked the witness whether or not he would from these facts think the testator sane or insane, capable or incapable of making a will, and received an answer."

The contestant's counsel was then permitted to ask the witness the question, "Doctor, in reference to the hypothetical question put to you, suppose that, in addition to what he asked you by way of hypothesis, that this man take charge of all of his wife's estate, will it away in this condition, and then, several days after, the testator forgets what provision he had made for his wife, he having limited her to $150 per month the balance of her lifetime, do you think he was in a condition to make a will?"

The answer of the witness was, "I should not think that this would indicate it."

Among other objections made by plaintiffs to the question, one was that the facts assumed in the question put were not shown by the evidence.

In fact there is nothing in the evidence tending to show that the testator had "willed away all of his wife's estate."

We think the court erred in not sustaining the objection to the question. We do not think it proper now to consider other errors assigned by either party.

. The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Delivered March 21, 1890.