## LANHAM v. LANHAM.

(Court of Civil Appeals of Texas. Texarkana. Oct. 20, 1910. On Motion for Rehearing, April 18, 1912.)

1. WITNESSES (§ 159*)—TRANSACTIONS WITH DECEDENT—ADMISSIBILITY—"TRANSACTION" —"COMMUNICATION."

On the issue as to whether a will was the result of an insane delusion, conceived by testator towards his wife about the time of his mother's death, testimony of the wife that, while traveling to the mother's funeral on a train, the testator sat several seats behind his wife, and that every time she looked back at him he was "gazing" at her, was not inad-missible as being a "transaction" or "communication" with the testator.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 664, 666–669, 671–682; Dec. Dig. § 159.*

For other definitions, see Words and Phrases, vol. 2, p. 1342; vol. 8, pp. 7060–7062; 7608; 7818–7819.]

2. WITNESSES (§ 188*) — COMMUNICATIONS BETWEEN HUSBAND AND WIFE—"CONFIDENTIAL COMMUNICATION."

Such testimony did not relate to a confidential communication between husband and wife.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 734, 736; Dec. Dig. § 188.*

For other definitions, see Words and Phrases, vol. 2, pp. 1421–1422; vol. 8, p. 7611.]

3. APPEAL AND ERROR (§ 273*)—OBJECTIONS —ADMISSION OF EVIDENCE.

Where part of the evidence, the admission of which is excepted to by a bill of exceptions, is admissible, the objection to the evidence will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1620–1630, 1764; Dec. Dig. § 273.*]

4. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—EVIDENCE.

On the contest of a will for insane delusions by testator towards his wife, admission of letters written by the testator to his wife before such delusions were conceived, which tended to show the love and affection entertained by him towards her, though erroneous, because they constituted confidential communications between husband and wife, were harmless; the law presuming that a husband loves his wife.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4153–4160, 4166; Dec. Dig. § 1050.*]

5. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—EVIDENCE—CONFIDENTIAL COMMUNICATIONS.

The admission in such case of letters, written while the husband was claimed to be harboring an insane delusion, and which showed resentment to supposed ill treatment of testator's mother by the wife, was reversible error; they being confidential communications between husband and wife, and it being impossible to say that they did not influence the jury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4153–4160, 4166; Dec. Dig. § 1050.*]

6. WILLS (§ 53*)—PROBATE—TESTAMENTARY CAPACITY—EVIDENCE.

On the contest of a will by testator's wife, on the ground that he entertained an insane delusion that she had no affection for him, evidence of hardships to which she was subjected in caring for him and their children while traveling for the benefit of his health was admissible.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 111, 112, 120–130; Dec. Dig. § 53.*]

7. EVIDENCE (§ 478*)—TESTAMENTARY CAPACITY.

On the probate of a will, executed in July by a testator who died the following December, a witness who first met the testator in the intervening November was permitted to express her opinion that he entertained an insane delusion towards his wife. *Held* that, in view of other testimony that such delusion arose about the time of his mother's death, about three weeks before the execution of the will, and continued to the date of his death, the evi-

dence was not objectionable as being too remote from the date of the will.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2242-2244; Dec. Dig. § 478;* Wills, Cent. Dig. §§ 113–115.]

8. WILLS (§ 54*)—TESTAMENTARY CAPACITY—EVIDENCE.

Testimony that a testator would spit into his drinking goblet, and that at one time he spat on his handkerchief and threw it on the floor, was admissible, on the probate of his will, as bearing on the issue of testamentary capacity.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 131–134, 136; Dec. Dig. § 54.*]

9. WILLS (§ 53*)—PROBATE—EVIDENCE—REASONABLENESS OF DISPOSITION.

As bearing on the reasonableness of a testator's disposition of his property, a conversation between his father and brother, not in testator's presence, in which the father stated that he did not want any of his property to go to the testator's wife's family, was incompetent.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 111, 112, 120–130; Dec. Dig. § 53.*]

10. WITNESSES    (§    340*) — IMPEACHMENT — MANNER.

A witness cannot be impeached by proof that she is addicted to the drink habit, where there is no offer to prove that her memory or judgment has been impaired as a result of such habit, or that she was intoxicated at the time the matters to which she has testified transpired.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1116, 1117, 1119, 1121; Dec. Dig. § 340.*]

11. TRIAL (§ 83*)—EVIDENCE—OBJECTIONS—HYPOTHETICAL QUESTIONS.

An objection to a hypothetical question, as to whether a testator, under specified circumstances, would be more subject to an erotic delusion than before such circumstance took place, was properly overruled, where the only ground stated was that there was no indication that testator went insane, or had a delusion, and there was evidence tending to show that he might have been laboring under a delusion.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 193–210; Dec. Dig. § 83.*]

12. APPEAL AND ERROR (§ 688*)—RECORD—ARGUMENT OF COUNSEL—READING LAW TO JURY.

A judgment will not be reversed on the ground that the trial court abused its discretion in permitting court decisions to be read to the jury, where such decisions are not set out in the bill of exceptions.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2894–2896; Dec. Dig. § 688.*]

13. WILLS (§ 52*)—TESTAMENTARY CAPACITY—BURDEN OF PROOF.

The proponent of a will has the burden of establishing the absence of an insane delusion, where such a delusion is in issue; it not being sufficient for him to merely prove general sanity, leaving the contestant to establish the delusion.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 101–110; Dec. Dig. § 52.*]

14. WILLS (§ 38*)—TESTAMENTARY CAPACITY—"INSANE DELUSION."

On the probate of a will, the court defined "insane delusion" as a belief in a state of facts that did not exist, and which no rational person would believe, and refused to charge that an "insane delusion" is a false belief,

arising spontaneously in the mind of a person, and founded on no evidence or reason, and persistently adhered to against all evidence, reason, or argument. *Held*, that the definition given substantially agrees with definitions previously approved by the Supreme Court, and that the refusal of the requested instruction was not error.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 78–81; Dec. Dig. § 38.*

For other definitions, see Words and Phrases, vol. 4, pp. 3644–3646; vol. 8, p. 7689.]

Appeal from District Court, Parker County; J. W. Patterson, Judge.

Proceeding by Fritz G. Lanham for the probate of the will of Edwin M. Lanham, which was contested by Mrs. Bessie Stephens Lanham. From a judgment declaring the will invalid, the proponent appeals. Reversed and remanded in conformity to the answers of the Supreme Court (145 S. W. 336) to question certified by this court.

By an instrument wholly written by himself, dated July 24, 1908, Edwin M. Lanham, who died December 3, 1908, bequeathed to his brother, Fritz G. Lanham, in trust for the benefit of his (said Edwin M.'s) two children, Samuel S. Lanham and Edwin M. Lanham, Jr., who survived him, and who were then aged, respectively, about six and four years, his entire estate, worth, it was alleged, the sum of about $20,000. By the terms of the instrument, the trustee was to hold the property so devised, "until," quoting its language, "each child shall attain to legal age, and then to be paid to my said children equally, share and share alike. I authorize my said brother Fritz G. Lanham, as trustee for my said children, to invest the property of this estate as his best judgment may dictate, but to lend no moneys without good and sufficient collateral security. I direct the said Fritz G. Lanham, trustee as aforesaid, to use so much of the income from this estate as may be necessary for the proper maintainance and education of my said children. In the event of the death of either of my said children before arriving at legal age, then the whole estate shall go to the survivor. And in the event of the death of both of my said children before arriving at legal age, I direct said trustee, Fritz G. Lanham, to partition to my brothers and sister by blood, Howard M. Lanham, Fritz G. Lanham, Frank V. Lanham and Grace Lanham Connor, or the survivors of them, the remainder of this estate, share and share alike." Probate by the county court of Parker county of the instrument in question as the last will and testament of said Edwin M. Lanham, deceased, was resisted by appellee, his surviving wife and the mother of his said children, on the ground that, "while," quoting the language of her pleading, "under the influence of an insane delusion or delusions as to his wife's affection for him, and as to the obligation he was under to his wife, which no rational husband

could have entertained, he, without any cause, conceived an insane dislike for his wife which impelled him to do her all the injury he could, and in consequence of which said will was made." The county court having refused to probate the instrument as said Edwin M. Lanham's will, appellant, who was named therein as executor, and who had offered same for probate, prosecuted an appeal from the order of said county court to the district court. In the latter court, a trial before a jury resulted in a verdict and judgment, declaring the will to be invalid. This appeal is prosecuted by said Fritz G. Lanham, the proponent of the will for probate.

Fritz G. Lanham and McCall & McCall, all of Weatherford, for appellant. Stennis & Wilson, of Weatherford, for appellee.

WILLSON, C. J. (after stating the facts as above). [1-3] Appellee, as a witness in her own behalf, over the objection of appellant was permitted to testify (quoting from the bill of exceptions) as follows: "That at Waco, Tex., at the residence of Dr. Howard Lanham, E. M. Lanham first heard of the death of his mother some time about midnight of the night the news reached Dr. H. M. Lanham; that immediately after learning of the death of his mother Mrs. Howard Lanham and Mrs. Bess Lanham left the Lanham home in Waco to go to a neighbor's to make arrangements about leaving Mrs. Howard Lanham's children with said neighbor while she could come to Weatherford; that after making said arrangements Mrs. Howard Lanham and Mrs. Bess Lanham returned to the Lanham residence, and on reaching the front porch there they found E. M. Lanham on his cot, where he had been sleeping; that Mrs. H. M. Lanham went on in the house, and Mrs. Bess Lanham went to the cot where E. M. Lanham was, and at said time he was crying; that she started to sit down by his side, but he motioned her to go in the house; that on the following morning, in riding on the train from Waco to Ft. Worth, E. M. Lanham sat in the coach several seats behind her. That she looked back at him several times, and every time she looked back at him he was gazing at her; that in coming from Ft. Worth to Weatherford she had in her handbag, or purse, a letter, written to E. M. Lanham by his mother, which he had received at Waco, Tex., and in some way had neglected or failed to take it with him when he left Waco, and she, finding the letter, put it in her bag or purse; that on the train between Ft. Worth and Weatherford Frank Lanham, having joined them at Ft. Worth to come to Weatherford, was sitting on an adjoining seat in the coach to witness and E. M. Lanham, and witness got the letter and started to hand it to Frank Lanham, when E. M. Lanham, seeing that she had the letter, took it out of her hand; that between the time they arrived in Weatherford and the time witness went to Ft. Worth E. M. Lanham, on one occasion at the old Lanham home, told witness that she had not loved him for several years, and that he had always known it." The objections urged to the testimony were: (1) That same detailed conversations and transactions had between the witness and the deceased, in violation of the statute (Sayles' Stat. art. 2302) declaring that "in actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with or statement by the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent." (2) That same detailed confidential communications between a husband and his wife. Similar objections were urged and overruled to the contents of certain letters, 14 in number, written by the testator to his wife. The rulings of the trial court are attacked as erroneous by the first and second assignments. Portions of the testimony quoted above—for instance, the statement of appellee that every time she looked back at her husband when they were on the cars traveling from Waco to Weatherford to attend his mother's funeral "he was gazing at her"—were, we think, relevant to the issue being tried, were not within the inhibition of the statute referred to, and were not confidential communications between husband and wife. The objections were to the testimony, as quoted, in its entirety. The rule is that "if the exception goes to the whole of the testimony complained of, and a part is admissible, the objection to the evidence will not be considered." Wells v. Hobbs, 122 S. W. 453, and authorities there cited. Without respect, therefore, to whether a part of the testimony quoted may have been subject to the objections urged or not, the court did not err in overruling same.

[4, 5] It was shown that the testator was devotedly attached to his mother and to his wife until a short time before the death of his mother. There was evidence tending to show that his mother believed his wife had not been as considerate for and as respectful towards her, nor as thoughtful about him, as she should have been. During many months immediately preceding the time his mother died, he had been suffering from tuberculosis of the lungs, and was in the weakened physical condition that disease produces. The death of his mother occurred July 2, 1908, at Weatherford. Her death was sudden and unexpected. When it occurred he was at Waco. He had, a short time before her death, received a letter from his mother, the contents of which the record

does not show. A theory of the contestant was that the death of his mother, occurring suddenly and at a time when he had become, by the ravages of the disease from which he suffered, greatly debilitated in mind as well as body, so unbalanced his mental faculties as to cause him, without reason and in spite of evidence to the contrary, to conclude that his wife, during the lifetime of his mother, had mistreated her, and neglected duties she owed to him and to their children. As relevant to this theory, 11 of the 14 letters referred to, specified in the bill of exceptions numbered 8, and written a short time before the death of his mother, were admitted as evidence to show the affectionate terms upon which he and his wife lived before his mother's death, and the contents of the other three were admitted as evidence showing that he harbored a belief that his wife had mistreated his mother, and that his feelings toward his wife had undergone a change. So far as the contents of the letters were material to issues in the case, same were, we think, confidential communications by a husband to his wife, and for that reason inadmissible as evidence in the case. Sayles' Stat. art. 2301; Mitchell v. Mitchell, 80 Tex. 116, 15 S. W. 705; 1 Green. Ev. §§ 254, 333, 337; 4 Wigmore, Ev. §§ 2332, 2336, 2337, 2341; Brewer v. Ferguson, 11 Humph. (Tenn.) 565, cited in 4 Wigmore, Ev. § 3264, note. While we think this is true, we would not feel bound to reverse the judgment on account of the error in admitting as testimony the letters written prior to the death of the testator's mother, showing love and affection entertained by him toward his wife. The law presumes that a husband loves his wife, and the admission as evidence of a confidential communication from him to her, showing the fact, ought to be treated as a harmless error. But we do not think the admission as evidence of the contents of the letters written after the death of the testator's mother can be treated as harmless. In one of said letters, written by the testator to his wife a short time after the death of his mother, he said: "I am sorry I cannot appreciate the affectionate passages of your letter. They don't ring true in my ears. Doubtless you think you are sincere, but you don't know yourself." In another, written July 27, 1908, he said: "I will write you a few lines while I feel equal to do it. Ella delivered your note, which seemed to show that the ardor of your former letters has abated somewhat, much as I feared. * * * Your attitude toward Mama during her lifetime was a deep wound to me, and the thought of it, which I could not force back, was no solace to my sorrow. I have never believed you had any good reason to dislike her, and I know she never injured you by thought or act. You did not appreciate her. Let this dismiss the subject between us. It has preyed on my mind and I am anxious to think of it no more. * * * Please do not discuss any portion of this letter with your family." The portions we have quoted of the letters referred to we think must be classed as confidential communications from the testator to his wife. As such, if prejudicial to appellant's rights, their admission as evidence cannot be treated as harmless. That they may have been so prejudicial, we think, is reasonably clear. The issue was: Was the testator, at the time he executed the instrument offered for probate as his will, laboring under an insane delusion in regard to his wife, which induced him to ignore an obligation he was under to make provision for her in his will, or not? The reasonableness or unreasonableness of his conduct in failing to make provision in the will for his wife was a fact relevant to that issue. Whether his wife regarded him with affection, and he believed she loved him or not, and whether she had mistreated his mother, and he believed she had mistreated his mother or not, were questions relevant to the one as to the reasonableness or unreasonableness of the provisions in the will. The jury had a right to regard, and may have regarded, the contents as quoted of the letters as entitled to, and may have given same, weight in determining whether the provisions of the will were reasonable or not, and have been so influenced by the illegal testimony as to find, when they otherwise would not have found, that the disposition made by the testator of his property was an unreasonable one. Such a finding so made by them may have influenced them to further find that the testator, at the time he made the will, was laboring under an insane delusion as to his wife. So, for aught we can say to the contrary from the record, the verdict returned may have been reached by the jury as a result of weight given by them to the illegal testimony. Therefore we feel bound to hold that the admission as evidence of the letters written by the testator to his wife after the death of his mother was such an error as requires us to reverse the judgment.

[6] Over appellant's objection thereto, on the ground that same was irrelevant and calculated to prejudice his rights before the jury, appellee, while testifying as a witness in her own behalf, was permitted to detail hardships to which she was subjected in July, August, and September, 1907, while traveling with her husband and their children, in a hack, from Weatherford through the Panhandle of Texas to New Mexico and then back to Weatherford, for the benefit of his health. The reasonableness or unreasonableness, in view of the circumstances surrounding him, of the disposition made by the testator of his property was a matter the jury had a right to consider in determining the question made as to the validity of his will. 1 Underhill on Wills, § 105; Prather v. McClelland, 26 S. W. 657. It seems to us that sacrifices made and hardships endured

by a wife in caring for her sick and almost helpless husband are a part of the circumstances surrounding him proper for consideration in determining the reasonableness or unreasonableness of a will made by him, like the one in question. Under the rule stated above, therefore, we think the testimony was admissible. And we think it also was admissible as tending to show the absence of any reason for the belief testimony admitted tended to show the testator entertained, that his wife had never cared for him. More convincing proof that his wife had cared for him, it seems to us, could not have been furnished than was furnished by the uncomplaining cheerfulness the evidence indicated appellee maintained while undergoing for his benefit the hardships and deprivations of the trip to which the testimony referred.

[7] The will offered for probate was written July 24, 1908. The witness Mary Risse met the testator for the first time November 14, 1908. After she had stated the facts on which she based her opinion, she was permitted, over appellant's objection, to testify that she thought the testator "was afflicted with an insane delusion, to wit, hatred of his wife." The ground of the objection to the testimony was that it was "too remote from said date of said execution of said will." It appears from the testimony of the witness in the record that when she stated that, in her opinion, the testator was afflicted with an insane delusion she had reference to his condition at the time she knew him, and not to the time the will was made. There was evidence tending to show warm affection of the testator for his wife just before the death of his mother, and a change in his feeling towards her immediately after his mother's death, continuing to his death. In other words, the testimony indicated that if he had an insane delusion with reference to his wife it arose about the time when his mother died, and existed at the time he executed the will. Under this state of the evidence, we think the testimony objected to was admissible. Huyck v. Rennie, 151 Cal. 411, 90 Pac. 931; 14 Enc. Ev. pp. 354, 380.

[8] The same witness was allowed to testify, over appellant's objection thereto on the ground that it did not tend to prove either the sanity or insanity of the testator, that during the time she assisted in nursing him he "would spit his sputum in the drinking goblet; that at one time he spat on his handkerchief and threw it on the floor." We think the testimony objected to was within the rule which, in such cases, permits full inquiry to be made into "acts, conduct, and sayings of the testator within such scope of time as is relevant to the making of the will." 14 Enc. Ev. pp. 334, 335, 353, and authorities there cited.

[9] On the ground that it was hearsay and irrelevant and immaterial, the court refused to permit appellant to prove by Dr. H. M. Lanham that his father, Governor Lanham, after the death of his wife, and when he himself was very sick and not expected to live long, declared to him (the witness) that he realized that he himself could not get well, and that it was only a question of time when his son, the testator, would die; and that he (Governor Lanham) further declared that "he did not want any of his property to go to the Stephens family (of which the testator's wife before her marriage to him was a member), and believed he would make a will and leave certain property to the children of the testator, instead of to the testator;" whereupon he (the witness) suggested to his father that, should he do so, it would show to the testator that his own father despaired of his ever getting well, and would have a very depressing effect upon him in his then condition. In a qualification of the bill of exceptions presenting the question made, the trial court explained that he sustained the objection to the testimony offered, on the ground that no knowledge of the conversation between the witness and Governor Lanham was brought home to the testator. Testimony was admitted showing a declaration similar to the one excluded to have been made by Governor Lanham in the testator's presence. We are unable to understand how the conduct of the testator could have been influenced by a declaration by his father, made when he was not present, and which was never communicated to him. Therefore we think the court did not err in excluding evidence thereof.

[10] The court refused to permit appellant to prove, in a way and by a person not mentioned in his bill of exceptions, that Mary Risse, who, as a trained nurse, assisted in caring for the testator during the last two weeks of his life, and who testified as a witness for appellee, in 1907 and ever afterwards "was addicted to the drink habit, being accustomed to become intoxicated." The objection to the testimony offered was that it was irrelevant, and that the credibility of said witness could not be impeached in that way. Conceding that the testimony excluded was not admissible for the purpose of impeaching the witness, appellant insists it was admissible, "in order to test her memory as to facts and the accuracy of her judgment as to her opinion as to the sanity of E. M. Lanham." We think the contention is without merit. Had the offer been to show that the memory or judgment of the witness had become impaired as a result of an addiction to the "drink habit," or to show that she was intoxicated during the time she assisted in nursing the testator, when she acquired knowledge of the facts upon which she based her opinion as to the condition of his mind, and had the court refused to permit appellant to make such proof, he might have cause to complain.

[11] On his cross-examination by appellee, Dr. Irby, a witness for appellant, was asked "if there is such a thing as an erotic delusion which grows out of one's great love for another, as would grow out of a love for a mother, if he was inclined to an erotic delusion, which all authorities lay down as growing out of one's love for another—would he be more subject to that after passing through these circumstances I have detailed—would he have been more subject to it then than before, and while he was at San Antonio?" The question was objected to, on the ground that "there is no indication that he went insane or had a delusion." The objection was overruled, and the witness answered, "I think so, perhaps." As there was evidence tending to show that the testator may have been laboring under an insane delusion as to the state of his wife's feelings towards him and his mother, we do not think the court erred in refusing, on the ground urged to it, to exclude the testimony.

[12] When counsel for appellee offered to read to the jury certain fact cases, appellant objected, on the ground that the reading thereof would be calculated to prejudice his case with the jury. From a statement made by the trial judge, qualifying appellant's bill of exceptions, it appears that in the opening argument counsel for appellant had read such cases to the jury. "I thought it but fair," the trial judge said in the statement, "to allow counsel for the contestant to do the same thing." The cases read by counsel are not set out in the bill; and we cannot say that the trial court abused the discretion he had in the matter. Wade v. De Witt, 20 Tex. 400; Railway Co. v. Dunlap, 26 S. W. 655; Blum v. Jones, 86 Tex. 492, 25 S. W. 694. In the case first cited, the court said "it would require a clear case of the abuse of judicial discretion, to the injury of the party, to authorize the reversal of a judgment for such a cause."

[13] In his main charge, the court instructed the jury as follows: "Our statute provides that before a will can be probated it must be proved, among other things, that the testator, at the time of executing the will, was of sound mind; and by this is meant, not only that he must have been capable of understanding the nature of the business he was engaged in, the nature and extent of his property, the persons to whom he meant to devise and bequeath it, the persons dependent upon his bounty and the mode of distribution among them, but also that he was not under the influence of an insane delusion as to the proper objects of his bounty, which affected the disposition he was about to make." Appellant requested and the court refused to charge the jury as follows: "The burden of proof is upon the proponent to prove that E. M. Lanham was of sound mind at the time the will was executed. If you believe from the evidence that the proponent F. G. Lanham has established

general sanity in said E. M. Lanham at the time of the execution of the will, then the burden is upon the contestant, Bess Stephens Lanham, to establish and prove, by a preponderance of the evidence, that E. M. Lanham had an insane delusion at the time he executed said will, which affected the execution of same." By his ninth assignment, appellant complains of the portion of the charge quoted and the refusal to give the one requested as set out above. The point made is that the burden of proving that the testator, in making the will, was not influenced by an insane delusion was not upon appellant, after he had shown that the testator was not, speaking generally, insane. But it seems to be the settled law in this state that such a burden rests upon the person offering a will for probate. Sayles' Stat. art. 1904, subd. 4; Prather v. McClelland, 76 Tex. 584, 13 S. W. 543; Id., 26 S. W. 657.

[14] In his main charge, the court defined the words "insane delusion" as meaning "the belief of a state of supposed facts that do not exist, and which no rational person would believe. He refused to charge the jury that "an insane delusion is a false belief, arising spontaneously in the mind of a person, not founded upon any evidence or reason, and is persistently adhered to against all evidence, or reason, or argument." In Prather v. McClelland, 76 Tex. 585, 13 S. W. 543, the trial court defined an "insane delusion" as meaning "the belief of a state of supposed facts which no rational person would believe." In Vance v. Upson, 66 Tex. 479, 1 S. W. 179, the jury were instructed that an "insane delusion" was "the belief of the existence of a state of supposed facts which no rational person would have believed." The Supreme Court approved as correct the charges so defining the term. As the definition here complained of was substantially the same as the definitions given in those cases so in effect approved by the Supreme Court, if we regarded it as inaccurate, we would not feel warranted in holding that to give it and refuse the requested definition was an error which justified a reversal of the judgment.

The refusal of the court to give to the jury certain instructions requested by appellant is made the basis of his twelfth, thirteenth, fourteenth, fifteenth, sixteenth, and seventeenth assignments. So far as the instructions referred to were not on the weight of the evidence, and for that reason properly refused, we think the matters they covered were sufficiently presented in the court's main charge and appellant's special charge No. 13, given by the court.

A question as to the sufficiency of the evidence to support the verdict and judgment is raised by the eighteenth, nineteenth, twentieth, and twenty-first assignments. As the case is to be remanded for a new trial, we will not discuss the question made by these assignments, further than to say that

we think the court did not err in submitting the case to a jury.

The judgment is reversed, and the cause is remanded for a new trial.

### On Motion for Rehearing.

When the motion was filed, we certified to the Supreme Court the question made as to whether the extracts from the letters written by the deceased to his wife after the death of his mother were "confidential communications between husband and wife," within the meaning of the rule of evidence relating to such communications, or not; and, if they were, whether the action of the trial court in admitting them as evidence, over appellant's objection, was such error as required a reversal of the judgment, or not. That court having answered in the affirmative, the motion is overruled.