## L. W. GADDIS v. WESTERN UNION TELEGRAPH COMPANY.

Decided November 4, 1903.

**Telegraphs—Proximate Cause—Mental Anguish.**

If the mental suffering and impaired health declared on in an action for damages for the negligent failure to promptly transmit and deliver a telegram were not produced by such negligence in a natural and continuous sequence, unbroken by any new independent cause, such negligent failure is not proximate cause for the injuries. See case where delay of message to husband announcing accident to wife caused no additional mental anxiety.

Appeal from the District Court of La Salle. Tried below before Hon. E. A. Stevens.

*C. C. Thomas,* for appellant.

*Webb & Goeth,* for appellee.

NEILL, ASSOCIATE JUSTICE.—Appellant sued appellee to recover $1984.60 damages alleged to have been occasioned by the latter's negligence in delaying the delivery of a telegram, and for the further sum of 40 cents paid the company for its transmission and delivery.

A general demurrer was sustained to appellant's petition, and judgment was entered dismissing his suit.

As the assignments of error bring in question the action of the court in sustaining the demurrer, we will state substantially the allegations in appellant's petition.

It alleges that on May 18, 1902, plaintiff resided in Cotulla, Texas, and his wife, Mamie, was then on a visit in Goliad, Texas. On that day plaintiff's wife was seriously and dangerously injured in a storm, and caused her brother, H. J. Passmore, to send from there to plaintiff the following telegram: "Goliad, May 18, 1902.—L. W. Gaddis, Cotulla, Texas: Storm over; all safe; Mamie hurt, but not dangerous. H. J. Passmore."

That Wayne Davis, who carried the message to defendant's agent for transmission, paid him 40 cents therefor; that by the exercise of due diligence the telegram could have been delivered to plaintiff before 8 p. m. on the same day, which would have enabled plaintiff to reach Goliad not later than 10 p. m. on the next; that by reason of the negligence of defendant the message was not delivered until 10 a. m. on May 19, 1902, which prevented plaintiff from taking the first train out of Cotulla, and from leaving there until the morning on which the telegram was delivered, and reaching his wife until 12 m. on the next day, fourteen hours later than he would, had it not been for defendant's negligence; that upon the receipt of the message plaintiff was greatly disturbed and suffered great anxiety because of his wife's injuries; that at 12:30 p. m. on May 19th he learned from the daily papers of the

storm at Goliad, and the great loss of life and injury in consequence to the inhabitants of said city; that defendant's agent at Cotulla knew the relationship existing between plaintiff and his wife, Mamie, mentioned in the message; that plaintiff was very fond of his wife, and not knowing the extent of her injuries, desired to be with her as quickly as possible to give her comfort in her distress; that after suffering several hours of misery and mental anguish, he succeeded in leaving Cotulla for San Antonio on a freight train, which did not reach the last named city until late that night, and there being no passenger train going from there towards Goliad for six or eight hours, and plaintiff being refused passage on a freight train, hid himself in a close and stifling box on top of a car in a cattle train going towards Goliad, by which he reached Yorktown at 8 a. m. on May 20th, where as quickly as possible he procured a team and drove to Goliad, arriving there at 12 m. on that day, where he found his wife dangerously wounded and a cripple for life. That from the time said message was delivered to him until he reached the bedside of his wife, plaintiff suffered greatly both mentally and physically, and impairment of health, which suffering and impairment were caused by the negligence of defendant in failing to properly transmit and deliver said message, to his damages, etc.

The questions presented for our decision under the assignments are: (1) Did the court err in sustaining the demurrers to plaintiff's petition? (2) If this should be answered in the negative, then did the court err in dismissing the suit?

Taking all of the allegations in plaintiff's petition to be admitted as true, can it be said that defendant's negligence in delaying the delivery of the message was the *proximate cause* of plaintiff's mental suffering and impairment of health? If his suffering and impaired health were not produced in a natural and continuous sequence, unbroken by any new independent cause, by such negligence, it can not be deemed the proximate cause of plaintiff's injuries. In order to hold a telegraph company liable for its negligent delay in delivering a message such damages must be shown to be consequences which one of ordinary prudence and experience, engaged in the business of transmitting and delivering telegraphic messages, fully acquainted with all the existing facts and circumstances, would, at the time of the negligent act, have thought reasonably possible to follow, if they had occurred to his mind. Shearm. & Redf. on Neg., sec. 28. When such consequences are shown, the "natural and continuous sequence," as the phrase is understood in the definition of "proximate cause," is established; and if the other constituents of the definition are shown "proximate cause" is proven.

Now, let us take the allegations in plaintiff's petition as facts established, and determine whether they tend to show that defendant's negligence in delaying delivery of the message was the proximate cause of his mental suffering and impaired health. We will at once lay aside any discomfort, inconvenience, suffering or injury that may have been

caused plaintiff while riding on top of the car of a cattle train hid in a close and stifling box, for it is too plain for argument that such discomfort, etc., could not have been proximately caused by the negligence complained of.

This leaves only to be considered the question of the proximate cause of his mental anguish.

Plaintiff knew nothing of the storm until he received the message, which informed him that it was "over, all safe, his wife hurt, but not dangerous." He never knew of the havoc, death and suffering caused by the Goliad storm until some hours after he received the message. He then knew, if the information it conveyed to him were true, that his wife was not dangerously hurt. The natural consequence of this information was to relieve him of great anxiety when he learned of the suffering and loss of life occasioned by the storm. Such relief was evidently intended by sending the telegram. If its purpose was not accomplished, it is because of man's nature, under such circumstances, to apprehend a more serious injury to a loved one than the news conveyed by a message warrants. If for this natural disposition of man the defendant could be held responsible, no liability could attach on that account in this case, for it is not responsible for the language of the message or the effect produced by it upon plaintiff's mind.

Until the telegram was received plaintiff's mind was at ease in regard to his wife. From the time the message should have been delivered until it was actually received, his peace of mind continued and was first disturbed by defendant's doing what it should have done sooner. Had it done its duty, the same anxiety of mind would have been produced, and it was simply postponed by the negligence complained of. In other words, had it not been for such negligence the message would have been delivered at 8 p. m. on May 18th, and then his mental anxiety would have commenced and have continued until 10 p. m. on the next day, when he would have reached his wife. On account of the negligence it was not delivered until 10 a. m. on May 19th, when his mental anguish commenced and continued until 12 m. the next day, when he reached his wife's bedside. So it is shown that he only suffered the same mental anguish the same number of hours from the same cause that he would have suffered had defendant been guilty of no negligence in the transmission and delivery of the message.

This demonstrates to a moral certainty that the negligence was not the proximate, or even the remote cause of plaintiff's mental anguish (Western U. Telegraph Co. v. McFaddin, 7 Texas Ct. Rep., 793; Telegraph Co. v. Edmonson, 91 Texas, 206), but that its sole cause was the information imparted by the dispatch itself. As the only damage recoverable under the petition was the 40 cents toll, of which the court had no jurisdiction (Rowell v. Telegraph Co., 75 Texas, 26, 12 S. W. Rep., 543; Telegraph Co. v. Arnold, 8 Texas Ct. Rep., 284, 1 Texas Law Jour., 121), the demurrer was properly sustained.

After sustaining the demurrer, it does not appear that the plaintiff asked leave or desired to amend his petition. If he had manifested a desire to amend, no doubt the right would have been accorded him. But standing mute when the demurrer was sustained, the court could not but dismiss his suit. The judgment is affirmed.

*Affirmed.*

Writ of error refused.