In re LOCKHART'S ESTATE.

No. 6296.

Court of Civil Appeals of Texas.
Amarillo.

May 4, 1953.

Rehearing Denied June 8, 1953.

Klett, Bean & Evans, Trout & Jones, Lubbock, for appellant.

Benson & Howard, Lubbock, Underwood, Wilson, Sutton, Heare & Boyce, Amarillo, for appellees.

NORTHCUTT, Justice.

This is a proceeding brought by appellee, Leona Knight, a feme sole, and Ernestine Watson, joined pro forma by her husband, Will Ed Watson, proponents below, filed in the County Court of Lubbock County for the probate of the will of their mother, Mrs. Lou Lockhart, deceased.

The appellant, Kaye Lockhart Edwards, contestant, 11 year old granddaughter of Mrs. Lou Lockhart, contested the probating of the will of Mrs. Lou Lockhart because of lack of testamentary capacity of the testatrix. The county court denied probate of the will.

On appeal by proponents to the District Court of Lubbock County, there was a trial before a jury. At the conclusion of the evidence, the District Court granted proponents' motion for peremptory instruction to the jury to return a verdict for proponents probating said will. From the judgment of the District Court granting probate of the will, appellant has duly prosecuted her appeal to this court.

It is the sole contention of the appellant that the trial court committed fundamental error in ordering probate of the will, and in refusing to submit the issue of testamentary capacity to the jury. Expressed in a different manner, if there was sufficient evidence of probative force as to the lack of testamentary capacity on the part of Mrs. Lou Lockhart, the court should have submitted such issue to the jury to determine. The appellant contended that her grandmother, Mrs. Lou Lockhart, had an insane delusion that influenced her in making the will in question, and that such delusion influenced her to draw the will different to what she would have drawn the same but for such delusion.

To justify the setting aside of a will on the ground that the testator was possessed of an insane delusion it must be shown that the will was the product or offspring of the delusion, or at least, that it was influenced by the delusion. The prejudice of the testator against a relative is not ground for setting aside a will unless it can be explained upon no other ground than that of an insane delusion. In arriving at the question of whether or not the testator, Mrs. Lou Lockhart, was acting under an insane delusion when she made the will in question, it is necessary to consider the evidence introduced to determine what her state of mind was.

Dr. Sam Hoerster, Jr., psychiatrist, testified in the trial of this case in answer to hypothetical questions being asked him. A physician is permitted to give his opinion on a hypothetical question put to him as witness. The hypothetical question need not hypothesize every act in evidence, but must sufficiently cover the evidence to justify expert opinion. It must fairly apprise the expert of the material issue of fact before the court upon which he is called to give an opinion. It need embrace only facts which the evidence introduced by the party who seeks to elicit the opinion tends to prove.

According to this record, Dr. Sam Hoerster's ability as a psychiatrist cannot be questioned. He is qualified both by training and experience. He testified that a person may be insane on one subject and yet of sound mind on all other subjects. We will not copy the hypothetical question asked Dr. Hoerster because of its length; but in reply to such question he stated Mrs. Lockhart was suffering from a form of mental disorder of derangement in respect to the asserted loss of the grandchild. He testified he believed she was suffering from a paranoid condition, and from the facts assumed in asking the hypothetical question he further testified it would certainly seem to be a delusion and would affect her mental ability in making the will. The doctor stated that he did not think Mrs. Lockhart was mentally able rationally to conceive the natural claim of those to whom she was related, and that based upon the

matters assumed in the hypothetical question, it was his opinion that the mind of Mrs. Lockhart, at the time she made such will, was governed by a false delusion to the extent that her mind was not able to estimate her obligations to such grandchild.

There is no question but what Mrs. Lockhart continued to hold the idea that she had lost her grandchild, and that she was not permitted to see the child; but she was continually assured she could see the child anytime she wanted to see it, and that the child would be brought to her home anytime she desired. Mrs. Fite testified she had a very casual acquaintance with Mrs. Lockhart, and that on one Sunday afternoon she had gone to the Post Office to mail some letters and as she was going out of the Post Office Mrs. Lockhart was coming in—that Mrs. Lockhart took her by the arm and said, "and I guess you knew that Alma wouldn't let me see my grandchild, didn't you?" Mrs. Smith testified that Mrs. Lockhart often talked to her about the baby and that the child was not allowed to come over any more. Dr. Clark testified Mrs. Lockhart had called Mrs. Clark during the day and told her they wouldn't let her see the child, and she was upset over it, and left word for Dr. Clark to call her. He called her that night and she seemed like grieving or crying over the phone and told him they would not let her see the child. Mrs. Wiginton testified she talked to Mrs. Lockhart and that she talked like she would like to see Kaye. Mrs. Wiginton said that there was never any question in her mind about Alma, Kaye's mother, being perfectly willing for Mrs. Lockhart to see the child at anytime, and that she told Mrs. Lockhart that anytime that Mrs. Lockhart wanted to see the child, she, Mrs. Wiginton, would bring Kaye to see her but that Mrs. Lockhart never took advantage of her offer. Kaye's mother assured Mrs. Lockhart she could see Kaye anytime she wanted to only when Mr. and Mrs. Watson were there. There was sufficient testimony to show that Mrs. Lockhart could have seen Kaye at anytime she desired, although she continued to be of the opinion she was not allowed to see the child.

Since the trial court instructed the jury to return a verdict for appellees, and refused to permit the jury to pass upon the issues, the evidence must be examined under the applicable rules shown in Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696, 697, by the Supreme Court:

"When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the courts."

The case nearest in point that we have found is the case of White v. White, 141 Tex. 328, 172 S.W.2d 295, 296, by the Supreme Court. In that case, a practicing physician who had never seen Mr. White was permitted to testify that certain bodily ailments would affect his brain and detract from his ability to think consecutively and that a man in such condition could not act intelligently about anything. In that case as in the case at bar, at the conclusion of the testimony the trial court instructed a verdict for the defendants. The judgment upon that verdict was affirmed by the Court of Civil Appeals. But, the Supreme Court in reversing the trial court and the Court of Civil Appeals in that case said:

"In determining whether it was proper to instruct a verdict in this case, we must view the evidence in the light most favorable to the petitioners, the losing parties. Thomas v. Postal Telegraph Cable Co., Tex.Com.App., 65 S.W.2d 282. We must indulge against the instruction every inference that may properly be drawn from the evidence. Texas Employers' Ins. Ass'n v. Boecker, Tex.Civ.App., 53 S.W.2d 327, error refused. And, if the record reflects any testimony of probative force in favor of the losing parties, we must hold the instruction improper. Clutter v. Wisconsin Texas Oil Co., Tex.Civ.App., 233 S.W. 322, error refused. A peremptory instruction is warranted only when the evidence is

such that no other verdict can be rendered and the winning party is entitled, as a matter of law, to a judgment. Stevens v. Karr, 119 Tex. 479, 33 S.W.2d 725. Applying these principles and considering Mr. White's age, his physical condition, the doctor's testimony as to the probable effect of his physical ailments on his mind, and the other testimony which we have summarized, we cannot say that reasonable minds could not conclude that he lacked sufficient mental capacity to execute the deed in controversy. Therefore, we hold that the issue should have been left for the jury's determination. The facts here closely parallel those in Chambers v. Winn, 137 Tex. 444, 154 S.W.2d 454. Many supporting authorities are cited in 36 Texas Digest, Trial,

The Supreme Court also stated in the case of Kelly v. McKay, 149 Tex. 343, 233 S.W.2d 121:

"However, upon a full consideration of the record, we are of the opinion that it is unnecessary for us to decide this question, because there was some evidence offered by the plaintiffs which would reasonably sustain a judgment in their favor, without the aid of the rule of res ipsa loquitur; and therefore the trial court erred in instructing a verdict for the defendant at the conclusion of the plaintiff's testimony. *In so deciding we have followed the settled rule that we must view the evidence in the light most favorable to the party against whom the verdict was instructed.* White v. White, 141 Tex. 328, 172 S.W.2d 295; Hoover v. General Crude Oil Co., 147 Tex. 89, 212 S.W.2d 140." (Italics ours.)

We are of the opinion that there was sufficient evidence in this record to require the court to submit to the jury the question as to whether the testatrix, Mrs. Lou Lockhart, was possessed of an insane delusion, and as to whether the will was the product or offspring of the delusion, or at least, whether it was influenced by the delusion. The judgment of the trial court is reversed and the cause remanded.