In the Matter of the ESTATE of
Charles H. GOOD, Deceased.

No. 5078.

Court of Civil Appeals of Texas.

El Paso.

Jan. 12, 1955.

Rehearing Denied Feb. 2, 1955.

Guinn & Guinn, A. L. Carlton, El Paso, for appellant.

Andress, Lipscomb & Peticolas, Allan L. Poage, El Paso, for appellee.

FRASER, Justice.

This is a will case which was tried to a jury. There was only one issue submitted, to-wit, the usual issue asking whether the testator had testamentary capacity. From a finding that the testator did possess testamentary capacity at the time of the execution of the will contestants have appealed, and as their first point charge that the verdict is contrary to and not supported by the evidence.

The will in question was executed by Charles H. Good in 1947. There is no allegation or suggestion of undue force or influence. Testator was born in 1881 and was therefore sixty-six years of age at the time the will was made and executed. The will is regular and normal in form, with two attesting witnesses. Testator named all of his surviving nine children, leaving them each $10, and gave the rest of his estate of approximately $50,000 to a Masonic Crippled Children's Home in Louisiana. Contestants maintain that the testator was laboring under an insane delusion to the effect that his children did not care anything about him and had abandoned him, and therefore he owed them nothing whatever. The evidence indicates that testator had had no contact with the Home to which he left his money, other than to discuss it with a Masonic representative in El Paso. Because of the point of error charged by appellants, viz., that the verdict was contrary to and not supported by the evidence, it has been necessary to examine the record with extreme and particular care to determine if this point is well taken.

Proponent presented some eighteen witnesses, all of whom testified that testator was of sound mind at or near the time of the execution of the will. These witnesses included the attorney who prepared the will, the subscribing witnesses, neighbors, and people in many types of business with whom testator had had dealings. Contestants countered with a number of witnesses, including relatives who testified that there had been no ill feeling or breach of relationship between testator and his children. The contestants also presented Dr. R. J. Bennett, who qualified as a practicing psychiatrist. Dr. Bennett testified in answer to an hypothetical question that in his opinion testator was of unsound mind at the time he executed the will, and based this statement on his opinion that the testator was laboring under an insane delusion to the effect that his children did not love him, had abandoned and neglected him, and he therefore owed them nothing. The doctor stated that in his opinion Mr. Good, the testator, was a victim of a mental disease called paranoia, and

pointed out in his testimony that sufferers from this disease could probably transact business as normally as anyone else and still possess an unimpaired memory so that they would appear normal in every respect except in the field where the alleged insane delusion operated. He explained that in his opinion testator was a typical victim of paranoia because his seven marriages indicated an inability to meet responsibilities, and feeling of rejection and persecution coupled with the nomadic urge to wander, plus the fact that testator had told several witnesses that he had lost a quarter of a million dollars on some property he gave to a former wife in Oklahoma. The doctor further said that all of these things coupled with the fact that the last ten years of his life were spent in El Paso accumulating money to give to this Crippled Children's Home was evidence of paranoia, and that this undertaking indicated that he thought he was going to be a great benefactor, and that such became a fixed and definite purpose common to paranoiacs. The doctor explained that as a result of the persecution and rejection complex the individual seeks to win recognition and be recognized as a great benefactor, and will actually relieve himself of all other obligations to achieve that particular goal.

The record indicates that testator had been married seven times, and that the nine children set forth in the will were his by several of these seven wives. One of the children was born about 1939, and he had not seen the child or its mother since 1940. There is no evidence in the record of any ill feeling of an inflammatory nature, or any quarrels or disputes between testator and his various children. One boy, in his spare time, had helped him with some house building up until the time the boy left El Paso in 1945. Another boy and his wife took care of testator about the year 1941 when he had been injured in an automobile accident. There was testimony that Christmas cards passed between one or two of the children and testator up until the time of his death in 1951. There is no record of any violent breach between any of the children and testator, and none of them had lived with

him since 1941. The will was made in 1947 and testator died in 1951. There is no record of any child living in or near El Paso since 1945, testator living in El Paso from 1940 until his death. He apparently accumulated about a fifty thousand dollar estate from 1941 up to his decease.

It has been decided that an insane delusion with reference to an object of bounty renders a testator incompetent on that score. Stone v. Grainger, Tex.Civ. App., 66 S.W.2d 484. It is therefore necessary to determine if testator here actually had an insane delusion regarding his children. Such a decision is not always easy to make. It must be kept in mind that the issue in this case is testamentary capacity, and it has been held that less mental capacity is required to enable a testator to make a will than for the same person to make a contract. Rudersdorf v. Bowers, Tex.Civ.App., 112 S.W.2d 784.

A delusion, to deprive a testator of capacity, must be an *insane delusion*. A mere mistaken belief and erroneous or unjust conclusion is not an insane delusion if there is some foundation in fact or some basis on which the mental operation of the testator may rest, even though the basis may be regarded by others as wholly insufficient. 68 C.J. 433 (30). We do not have, as in the Grainger case, supra, a sudden termination of long continued affection, replaced by violent hatred. Persons harboring personal dislikes or injured feelings or even sulking without cause deemed sufficient by others are not necessarily suffering from insane delusions. It is the common idea, of course, that children have the right to some of the property of parents, but it is the law of Texas that a citizen of this state may by his will dispose of his property without regard to the ties of nature and relationship, and may do so in defiance of the rules of justice or the dictates of reason, and

" 'no sentimental considerations of love and affection that should actuate a man in dealing with his own blood can be decisive as to the validity of a will that has been executed by a person pos-

sessing testamentary capacity and without undue influence.' " Stolle v. Kanetzky, Tex.Civ.App., 220 S.W. 557, 559.

It has been said that the power of disposing of property is an inestimable privilege of the old. It is evident that we must decide here whether the testator harbored an insane delusion or was simply displeased and unhappy with his children. Mere erroneous belief or mistaken ideas are not enough, as was said in Navarro v. Rodriguez, Tex.Civ.App., 235 S.W.2d 665, 667:

"Even rational human beings are subject to mistake, prejudice and ill-founded conclusions. 'A delusion, to deprive the testator of capacity, must be an *insame delusion.* An insane delusion such as will affect testamentary capacity is an idea or belief which has no basis in fact or reason and to which the testator adheres against reason and evidence, or, in other words, it may be stated to be a belief in a state of facts that does not exist and which no rational person would believe to exist. A mere mistaken belief or an erroneous or unjust conclusion is not an insane delusion if there is some foundation in fact or some basis on which the mental operation of the testator may rest, even though the basis may be regarded by others as wholly insufficient.' "

It must be noticed that none of the children here have lived with testator for some six years prior to the execution of the will. There is no evidence of fear on the part of testator of anybody. There is no evidence that testator thought any of his children would harm him, but only that they had neglected him. Also it is in the record that he divided up some real estate with a former wife in Oklahoma. Contestants brought out the fact that on several occasions testator had represented in certain papers executed by him that all the children were grown and maintained therefore that he did not know or remember the objects of his bounty, but it cannot be denied that he did mention each and every child in his will. He had no wife at the time of his death, and no child born after the execution of the will.

As to the doctor's testimony that he interpreted testator's many matrimonial failures and his corresponding failure to support to any appreciable degree the children of these marriages as rejection and inability to meet responsibilities, it must be admitted that that is only one interpretation, and the jury apparently rejected it. Such failures could have been attributed to a bad disposition or some other personal characteristic, and his failure to support his children could likewise have had causes other than paranoia, and the jury apparently so found. Summing up, we are forced to acknowledge that the proof apparently falls short in the eyes of the jury to constitute the testator's attitude toward his children as that of an insane delusion. There is evidence to support the jury's finding of testamentary capacity, as illustrated by the eighteen people who so testified. Testator's attitude toward his children is in our opinion capable of more than one interpretation. It had some foundation in fact in that testator apparently felt that he had accumulated this estate by himself in El Paso, and that his children had neglected him. It is true that he did see very little of his children after 1941. One boy helped him with some houses until he left in 1945, and a daughter-in-law testified that she and her husband occasionally stopped off for a few hours in El Paso when they were going through. With this exception it is evident and obvious that none of the children lived with him or cared for him or helped in any way to accumulate his estate, all of which was accumulated between the years of 1941 and 1951. The record also shows that in each case the divorced wife was given the exclusive custody of the children. With regard to the testimony of the psychiatrist, the record shows that several years before his death testator discussed his plan to leave an estate for these crippled children, with a local representative of the Masonic order and other witnesses, all of whom testified that in their opinion he was a man of sound mind, so there was no other evidence indicating any obsession or illusion of grandeur as the reason for his plan. It would seem that if testator were grasping at an opportunity, as

the psychiatrist suggested, to attract attention to himself with this goal or purpose, that he could have picked a more spectacular method than that of willing his estate to a hospital, or home, in Louisiana. Even though the disposition of an estate appear unfair or petty, or even ungrateful, it is the testator's to do with as he wishes, regardless of injured pride or feelings or blighted hopes and expectations, and the cases clearly hold that when a testator disinherits child or children because he mistakenly feels neglected or offended, he simply puts a wrong interpretation on existing facts, but such is not an *insane delusion,* for that must be based on non-existent facts. Knight v. Edwards, Tex., 264 S.W.2d 692. Here, the testator reached the conclusion that his children did not care for him, based on facts which are not in dispute, to-wit, that he had seen only one or two of the nine children in the ten year period, and then only occasionally since 1945, and he had lived here by himself during that time, and died here in 1951.

■ The disposition of this testator's estate may well be unjust. His feelings about his children may have been improper and not such as would justify this disposition of his property, but we cannot say that the evidence shows the presence of an insane delusion without foundation in fact, and we therefore are constrained to hold that there was sufficient evidence for the jury's finding, and we must therefore overrule appellants' first point of error.

■ Appellants' second point complains of the action of the trial court in excluding the testimony of Ruth Ella Good Henson. The question asked was as follows:

"During the time you were here in December, 1940, and January 1941, were you in the house with Schuyler and his wife when your father was there and hurt?"

The record is silent as to what the witness would have testified to had she been permitted. The objection was based on the prohibitions of Art. 3716, Vernon's Ann. Civ.St., and we think was well taken as re-

ferring to a transaction with deceased. Furthermore, there is no bill of exception showing what the witness would have answered, nor does the same appear in the statement of facts. We therefore overrule appellants' second point

Appellants' third point complains of misconduct on the part of the jury. With regard to this point of error it is elementary that the trial judge has great discretion and latitude in respect to the motion for a new trial. The statements complained of as misconduct are sharply contradicted and it must be presumed that the trial court found the fact questions against the appellants. Here the jurors themselves differ widely and sharply, and so we must presume that the trial judge found these fact questions against appellants in his action in overruling the motion for a new trial.

We therefore overrule all of appellants' points and affirm the decision of the trial court.