Ruth F. Dougal KLINKSIEK et al.,
Appellants,

v.

Frank C. BROWER, Appellee.

No. 3359.

Court of Civil Appeals of Texas.

Waco.

April 12, 1956.

Rehearing Denied May 3, 1956.

Dibrell, Gardner & Dotson, San Antonio, for appellants.

W. Pat Camp, S. D. Callender, Chas. F. Guenther, Jr., San Antonio, for appellee.

McDONALD, Chief Justice.

This case involves a contest of the will of Mrs. Augusta Dougal, deceased. The case was tried to a jury and submitted on one special issue, to wit, whether or not the deceased had testamentary capacity. The Trial Court refused to instruct the jury as to *insane delusions* or to submit requested issues with reference to insane delusions, and refused to submit the issue of undue influence. The jury answered the special issue submitted, finding that the decedent did have testamentary capacity, and the Trial Court entered judgment admitting the will to probate. Contestants appeal contending: 1) That the evidence raised an issue as to whether the will was a result of insane delusions, and that the Trial Court erred in not instructing on or submitting such. 2) That the finding that decedent had testamentary capacity is against the great weight and preponderance of the evidence. 3) That the Trial Court erred in not submitting an issue on undue influence. 4) That the testimony of the witness Margaret Schmidt Glogovack was admitted in violation of Article 3716, R.C.S. 5) That the Trial Court erred in sustaining objection to jury argument of contestants' counsel; and further, in permitting proponent's counsel to make certain jury argument.

The basis of the contest of decedent's will in the Trial Court was that at the time she made same, she was the victim of insane delusions which affected the disposition she made of her property. Whether the question of insane delusions was raised by the evidence presents the principal issue for determination on this appeal.

A résumé of the record in the light most favorable to contestants' contentions reveals that Mrs. Dougal, the decedent, originally lived in Florida; that she had three children, a son who is and has been for most of his life in an insane asylum in Florida, a daughter, who is married to a school teacher and lives in Florida, and a daughter Ruth, who is married to a man named Klinksiek, lives near Fredericksburg, Texas, and is contestant in this case; that decedent's husband died in 1940 and that in 1942 she moved from Florida to San Antonio and moved into an apartment with her daughter Ruth (who was then single and lived in San Antonio); that decedent, in September 1943, without telling her daughter, purchased a home on Mason Street in San Antonio and moved into same. Decedent married a man named

Duval in 1947 but secured a divorce from him in 1949. In 1947 decedent executed a will leaving all of her property in trust for her son (in the insane asylum) and left her two daughters $1 each. In 1950 Frank Brower, the proponent of the will here in controversy, and a nephew of decedent, came to San Antonio while in army service. His family, consisting of his wife and two children, accompanied him. He and his family stayed in San Antonio for about a year, during which time they visited decedent, took her out to dinner and were in every way exceedingly kind and considerate toward her. While in San Antonio the decedent executed a deed to her home to her nephew, reserving a life estate for herself. In 1951 decedent executed the will in controversy in this case, leaving $5 to each of her two daughters; $750. in trust to bury the son in the insane asylum; and the balance of her estate to her nephew, Frank Brower, the proponent and appellee herein. The total value of decedent's estate is less than $2,000. Decedent, during her last few years, was suffering from hardening of the arteries, chronic duodenal ulcer, and died in June 1952 of a coronary occlusion. While the record reflects no mistreatment of the deceased by her two daughters, it does reflect that the daughter in Florida visited her mother only once in the last ten years of her life (and none during the last five years of her life), while Ruth, the daughter who lived near Fredericksburg, only visited her mother about a half dozen times during the last five years of her life. It is reflected that the decedent felt that her daughters had disowned her and had left her to live the last few years of her life alone and without their love. The daughter in Florida did not come to the decedent's funeral, while the daughter in Fredericksburg although coming to the funeral, would not help with the funeral arrangements. Proponent Frank Brower made the funeral arrangements.

In the Trial Court contestants offered the daughter from Florida (who disclaimed so she could testify), who testified to the effect that the decedent was of unsound mind at the time of the execution of the will. (She had not seen her mother in more than five years prior to the execution of the will.) Also tendered was Duval, the second husband of decedent and from whom decedent secured a divorce, who testified that he thought decedent of unsound mind; and a lady for whom decedent had done washing and ironing. Contestants further tendered a psychiatrist, who, although he had never seen decedent, testified that she was of unsound mind in his opinion, in answer to hypothetical questions detailing her alleged activities in the past over a period of twenty or more years. The psychiatrist further testified that in his opinion the decedent suffered from "*delusional insanity*." As against the foregoing the proponent tendered evidence from the lawyers who prepared both her 1947 and 1951 will; two different doctors who had treated her on different occasions, both before and after the date of the will; neighbors, friends and business acquaintances; the attesting witnesses to her will; a registered nurse who was a neighbor and friend; all of whom testified that decedent was of sound mind. The jury, in answer to the special issue submitted, found the decedent to have been of sound mind.

We come now to an examination of the authorities relating to insane delusions on the part of a testator as affecting testamentary capacity.

Our Supreme Court, in Knight v. Edwards, 153 Tex. 170, 264 S.W.2d 692, 695, has this to say:

"The courts of this state have defined the term '*insane delusion*' as being '*the belief of a state of supposed facts that do not exist, and which no rational person would believe*' * * *.

"Text writers frequently state the rule to be that a delusion cannot be an insane one if it is founded upon any evidence whatever * * *, 'To constitute a delusion sufficient to invalidate a will, the subject matter must have no foundation in fact, for there is no such thing as a delusion founded upon facts. An insane delusion must

be a belief which is not founded on evidence, since if there is any evidence, however slight or inconclusive, which might have a tendency to create a belief, such belief is not a delusion. * * * The essential question is whether the testator had before him any facts on which his belief might have been founded, irrespective of the actual evidential force of such facts.' "

In Knight v. Edwards, supra, citing Navarro v. Rodriguez, Tex.Civ.App., 235 S.W.2d 665, the court says:

" 'Obviously, a testator need not always be right in his deductions in order to avoid being classed as insanely deluded. * * * One cannot be said to act under an insane delusion if his condition of mind results from an inference or process of reasoning, however illogical, *from facts which are shown to exist.*' "

See also In re Good's Estate, Tex.Civ.App., 274 S.W.2d 900, W/E Ref. N.R.E.

There is not one line of evidence in this record that the decedent entertained unfounded beliefs in respect to her property or the object of her bounty except that evidence which reflects that the decedent felt that her daughters had left her to live the last few years of her life alone and without their love.

If the decedent believed the foregoing, and if same were not true, and if same influenced her in making her will the way she did (none of which has been shown to be the case), still such would not be an *insane delusion* as would affect her capacity to make a will, since it is also of record that the daughters had not visited their mother to any extent. In other words, if the mother believed she was neglected, there were facts and circumstances of record upon which such belief could be predicated.

■ We hold that as a matter of law the evidence in this case does not and cannot support a conclusion that the decedent was a victim of an insane delusion at the

time she made her will. From the foregoing it likewise follows that there was ample evidence to support the jury's finding that the decedent possessed testamentary capacity at the time she made her will.

■ There is not a line of evidence in this record to support an issue of undue influence. In fact, the only person who is suggested by contestants to have exercised such is Frank Brower, the proponent and decedent's nephew. He didn't know of the existence of the will until after decedent's death. Further, decedent made a will in 1947 in which she left her daughters only $1—this being prior to her acquaintance with her nephew. See Curry v. Curry, 153 Tex. 421, 270 S.W.2d 208.

■ Contestants complain that the testimony of Margaret Schmidt Glogovack was prohibited by Article 3716, R.C.S. Margaret Schmidt Glogovack was a neighbor of decedent, who was named as the executrix in the will. She had absolutely no interest in the estate, filed a motion in the case requesting that she be permitted to withdraw as a party to this case and refused to qualify or act as executrix. Such motion was granted, after which she was no more precluded from testifying than was decedent's daughter, who filed a disclaimer in order to testify. Further to the above, however, it was Margaret Schmidt Glogovack who gave the *only* and *sole* testimony in this record that is even suggestive of any sort of delusion on the part of decedent. It was she who testified that decedent felt neglected and that her daughters had left her to live her last years without their love.

■ Contestants' final complaint is that the Trial Court erred in sustaining an objection made by proponent to contestants' jury argument. It is shown in the record that the contestants made the same argument later during his argument to the jury without objection. If such ruling by the Trial Court was error, it was harmless. Contestants further contend that certain of proponent's argument to the jury was objectionable. The record discloses

this argument was made in reply to matters already argued by contestants, and for such reason was legitimate and proper. In any event, if error it was harmless. See Rule 434 Texas Rules of Civil Procedure; Aultman v. Dallas Ry. & Terminal Co., 152 Tex. 509, 260 S.W.2d 596; Lumbermen's Lloyds v. Loper, 153 Tex. 404, 269 S.W.2d 367.

All of contestants' points have been carefully considered and are overruled. The judgment of the Trial Court is affirmed.