**Billy GRAHAM et al., Appellants,**

v.

**Marilyn Pruett DARNELL et al., Appellees.**

**No. 17738.**

Court of Civil Appeals of Texas, Fort Worth.

June 25, 1976.

Rehearing Denied July 23, 1976.

Fillmore, Lambert, Farabee, Purtle & Lee, and Clyde Fillmore, Wichita Falls, for Billy Graham Evangelistic Ass'n and Billy Graham, Individually.

J. Walter Friberg and Elmer H. Parish, Wichita Falls, for First Baptist Church, Wichita Falls, Texas.

Nelson, Sherrod & Carter, and Eugene Sherrod, Wichita Falls, for appellees.

## OPINION

MASSEY, Chief Justice.

Appeal is from order of the County Court denying applications, separately made, to admit either of two separate wills to probate, and to continue temporarily the administration of a deceased's estate theretofore granted upon application of a natural daughter.

Judgment is affirmed.

At the outset we are presented with motion of the contestants (of both wills) to dismiss the Billy Graham Evangelistic Association as a party to the case. Our examination of the records reflects that if such association is interested in the litigation it could only be through an assignment by proponents of one or the other of the proffered wills. There is nothing in the record to reflect this fact, if indeed it is a fact. To permit the association to participate in the appeal could only confuse. The motion is granted and the Billy Graham Evangelistic Association is dismissed as a party.

For background of the case, as essential to additional discussion, chronology noted is as follows:

1. 1930, year in which Sadie Pruett married Tom Pruett, the testator in both wills hereafter noticed.

2. 1949, year in which Jimmie, son of Sadie and Tom Pruett sustained injuries and died.

3. 1951, year in early part of which Sadie and Tom Pruett were divorced, and after which there was total estrangement of Tom Pruett from his children. The two minor children, Marilyn Pruett Darnell and her brother, William, were then arrived at the approximate ages of 17 and 16, respectively.

4. 21 October 1965, date of first of the wills signed by Tom Pruett, commonly termed the Church Will. At that time Marilyn Pruett Darnell was 32 years of age and William Pruett was 31 years of age.

5. 10 June 1974, date of the second will signed by Tom Pruett, commonly termed the Billy Graham Will. Recited therein was testator's revocation of all wills by him theretofore made. At that time Marilyn Pruett Darnell was married and had three children, two of which were adopted. At that time William Pruett had three children, these being mentioned in the second will as "I have three grandchildren, who are the children of my son, Billie Pruett."

6. 29 January 1975, Tom Pruett died.

7. 20 March 1975, or within a few days therefrom, proceedings were filed with the County Clerk of Wichita County, Texas, pursuant to V.A.T.S. 17A, Probate Code, Sec. 11, "Applications and Other Papers to be Filed With Clerk." Pleading by which the trial court acquired jurisdiction was the petition by Marilyn Pruett Darnell for letters of administration. Attachments thereto included both the wills signed by Tom Pruett, deceased, Mrs. Darnell's contest thereof being presented by her pleading. Her brother, William H., thereafter filed his pleading by which he joined with Mrs. Darnell in contest of both

wills. Letters of temporary administration were granted to Mrs. Darnell.

Subsequently all necessary and proper parties were brought before the trial court, which proceeded to trial without a jury, and rendered the judgment appealed from. The First Baptist Church of Wichita Falls, Texas, and Billy Graham, were the only parties perfecting appeal. The church was named as a beneficiary in the first, or Church Will, and was proponent of its admission to probate. Mr. Graham was named as a beneficiary in the second will and was proponent of its admission to probate.

In this non-jury trial no findings of fact or conclusions of law were filed by the trial court, none having been requested.

■ It is settled that in a non-jury trial when findings of fact and conclusions of law were not requested or filed, the judgment of the trial court must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *Seaman v. Seaman,* 425 S.W.2d 339 (Tex.Sup., 1968), and *Crawford v. Boyd,* 453 S.W.2d 232 (Fort Worth Civ.App., 1970, ref., n.r.e.). The following is from *Crawford v. Boyd,* supra: "In such a case the trial court's judgment implies that all necessary fact findings were made by that court in support of the judgment. . . ."

We are required to apply the law referred to in deciding this case.

■ And in such a case where there is complaint that some necessary fact finding was so contrary to the great weight and preponderance of the whole of the evidence proper to be considered as to be clearly erroneous it becomes necessary to review the entire evidentiary record in making applicable tests. *In re Kint's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

Other than as applied to complaints of admission and consideration of certain evidence in violation of the "Dead Man's" statute, to be hereafter noticed, the basic contentions of both the First Baptist Church and of Billy Graham are that there was no evidence of probative force and effect to support the judgment; and that such evidence as there was was insufficient to support the findings upon which the judgment was based, or that the findings made were so contrary to the greater weight and preponderance of the evidence as to be clearly erroneous.

■ Actually, contestants having at the initial state timely resisted the admission of any will to probate the burden of proving testamentary capacity was upon proponents, against whom judgment was rendered. Under these circumstances proponents' only available point of error would be one by which they contended that the judgment, and underlying findings for contestants, was so contrary to the great weight and preponderance of the evidence as to be clearly erroneous. *Galindo v. Garcia,* 199 S.W.2d 499 (Tex.Sup., 1947), and the dissenting opinion of Judge Murray in *Garcia v. Galindo,* 199 S.W.2d 488, 498 (Tex. Civ.App., San Antonio, 1946).

If both the wills were properly executed there would be error in the judgment only if either at time of the execution of the Church Will in 1965, or at the time of the execution of the Billy Graham Will in 1974, we should justifiably conclude that the trial court should not have concluded, as it did, that Tom Pruett, testator, lacked testamentary capacity because he was laboring under an insane delusion or delusions that his children had abandoned him, hated him, were unjustifiedly ungrateful, etc., thus causing him to fail to materially provide for them by either will.

The deceased certainly had the ability to know and understand the effect of making his will on both occasions when they were signed to know and understand the nature of kinship to his children, and their claim upon him by reason thereof, and to know and understand the general nature and extent of his bounty, etc. In other words it appears to be conceded by all parties that Tom Pruett did at all material times possess testamentary capacity—save and except for the questions existent upon insane delusion.

In the Church Will each of the children was given $5.00. In the Billy Graham Will,

Marilyn was not mentioned at all; and though William was mentioned in the Billy Graham Will he was given nothing thereby, although each of his three children was therein bequeathed $2,000.00 (with notation of an earlier purchase for each a $2,000.00 Series E Bond). The exact value of the estate of the decedent was not established by the evidence. By the Church Will the First Baptist Church was given substantially the whole of testator's estate; by the other will, in which earlier will was revoked, Mr. Graham was given $100,000.00 with the Church given nothing.

■ In Texas an insane delusion, such as will vitiate a last will and testament is " 'the belief of a state of supposed facts that do not exist, and which no rational person would believe' ", *Knight v. Edwards,* 153 Tex. 170, 264 S.W.2d 692, 695 (1954).

In *Knight* is considerable discussion which enables one to have full understanding of the meaning of the words of the definition in resolving issues in cases having different factual backgrounds. In the instant case the test is whether the contestants' evidence establishes the absence of any factual basis for a belief which no rational person would entertain, but which belief the deceased Tom Pruett unjustifiably did entertain, that his children had "divorced themselves" from him, had been caused by their mother to become estranged from him with their concurrence, that they were unjustifiedly ungrateful, and that they hated him and desired to remain estranged.

By the whole of the voluminous evidence presented the trial court, as the fact finder, we believe that the trial court could have found either way on this question as of the time the deceased signed either or both wills without committing error. As heretofore noticed it is to be presumed, due to the absence of findings of fact and conclusions of law, that there were findings that Tom Pruett, deceased, was laboring under insane delusions to the identical specified effects on both occasions when he signed wills.

■ The finding of insane delusion on the part of the deceased was undoubtedly made as applied to the Billy Graham Will as of the time it was signed, it unquestionably having been executed according to the requirements of law. This was so because the evidence established testamentary capacity unless destroyed by insane delusion. A like finding as applied to the Church Will was undoubtedly made, but not necessarily. As applied thereto evidence raised the additional question of whether the Church Will had been executed in the presence of two subscribing witnesses. Thus there would be the additional presumed finding on the part of the court that the Church Will had not been executed in accordance with legal requirements. If not so executed and validated it would be inadmissible to probate for this additional reason. Such presumed finding was not contrary to the great weight and preponderance of the evidence.

There is little doubt that the proponents of each will were wise in their election to try the issues before the court. In view of the evidence any jury which might have received the case could not have failed to be influenced in behalf of the contestants. It clearly appeared therefrom that until Tom Pruett's estrangement from his children, whether by his choice or otherwise, the deceased had always neglected and/or mistreated both, and his son Jimmie as well, prior to his death in 1949.

■ In brief there seems to be no question but that the deceased had been high tempered, emotional, an exceedingly harsh disciplinarian of his children, and a person disposed to "carry a grudge" against anyone—especially anyone who was or had been close to him because of business relationship, friendship or kinship—from whom he had received actual or imagined mistreatment or imposition, or had received a real or fancied slight. The above was true from the time his children were very small, continuing and persisting until the accidental death of his son Jimmie in 1949.

Here there began to be questions and issues which are in controversy, but by substantial evidence it was shown that about the time of Jimmie's fatal accident the

aforedescribed characteristics and personality traits of the deceased became aggravated, with an increased effect as time passed. He began to deem Jimmie as having been his only "good" child, and that the remaining children were "Tom Pruett haters". Without foundation in fact, and indeed contrary to facts proved, he blamed his wife for Jimmie's death through concluding that it had been his wife who had given Jimmie permission to go on the camping trip during the course of which he sustained his fatal accident.

There were many instances in which it was shown that his actions and reactions to real and to imagined circumstances (in which there was no foundation in fact) displayed his paranoid condition earlier than 1949, and its development and aggravation after 1949. As applied to many of these there was medical opinion testimony by which the paranoia was proved, supported upon delusions as a factor. Insane delusion at the material times and in material aspects, constituting mixed questions of law and fact, became determinative issues by the evidence. Whether as applied to testamentary capacity insane delusions actually existed at time of, and controlled, the purported efficient execution of each of the wills was clearly raised.

Upon the very material issue of insane delusion the court, clearly a dispassionate fact-finder, is presumed to have made the necessary determinations. From the evidence of the contestants, especially that which applied to Tom Pruett's son William (who was shown to have stood ready and willing to establish a filial relation with the deceased if only afforded the opportunity, and to have at various times gone to some effort so to do only to meet with rebuff), it was shown that there was no foundation in fact upon which the deceased could have acted to their detriment by any will in either 1965 or 1974 had he been rational upon the matter of events pertaining to his relationship to them. In any event the evidence produced by contestants had probative force and effect; and the implied findings of want of testamentary capacity

on both the material occasions, upon which judgment was based, were in no respect so contrary to the greater weight and preponderance of the whole of the evidence as to be clearly erroneous.

There was evidence in the case contended by proponents to have been erroneously received because of the "Dead Man's" statute, V.A.T.S. Art. 3716, "(Evidence)—In actions by or against executors, etc." Their identical contentions are that William H. Pruett was permitted to testify concerning transactions with his deceased father and that admission of his evidence amounted to harmful error.

There exists a question upon whether the First Baptist Church had waived its right to complain. The waiver in question was because of the production of the same witness' testimony upon the same transactions when his deposition was taken prior to trial. Thereat the attorney for the First Baptist Church was not present. His prior stipulation made, relative to the taking of the deposition, was that questions asked the witness by any attorney for any other party might be considered as having been asked by him. With such stipulation honored there resulted a waiver of the right of the First Baptist Church to complain at time of trial. *Jackson v. Jones* (Mumford's Executor), 74 Tex. 104, 11 S.W. 1061 (1889); *Allen v. Pollard,* 109 Tex. 536, 212 S.W. 468 (1919); *Hopkins v. Robertson,* 138 S.W.2d 310 (Tex.Civ.App., Fort Worth, 1939, error refused); and the article in 27 Tex.Bar Journal, May, 1964, p. 315, by the Honorable Ruel C. Walker, Associate Justice, Supreme Court.

Billy Graham did not make any like stipulation. Graham's attorney was present at time the deposition of William H. Pruett was taken, but he asked no questions. Upon the trial such attorney did object under provisions of the "Dead Man's" statute when questions were asked William H. Pruett concerning the same transactions. The trial court declared that he would hear all of the witness' evidence, holding his ruling on the objection in abeyance; that should he conclude that the evidence was

**696**

inadmissible he would not consider it, but that in such event the evidence would stand in the record as a bill of exception by contestants because of its exclusion.

■ William H. Pruett was recalled by the attorney for the First Baptist Church after he had first testified over objection. Upon being recalled he was interrogated by the attorney for the First Baptist Church concerning a certain transaction upon very late occasion in the life of the deceased. It amounted to a transaction with deceased by William H. Pruett at that time. Billy Graham's attorney did not object. Interests of the clients of these attorneys were adverse, one to the other. The transaction inquired about was not necessarily related to anything which could have resulted in harm to the interests of Billy Graham nor was it related to prior transactions, evidence of which might have been harmful. We hold that there was nothing in the occurrence and in the failure to object to the testimony that amounted to waiver by either Graham or the First Baptist Church of rights under the "Dead Man's" statute, it constituting a distinguishable transaction. *Jackson v. Jones* (Mumford's Executor), supra.

We hold that it would have been error as to Billy Graham for the trial court to have considered the evidence complained of on William H. Pruett's transactions with the deceased, while at the same time it would not have been error to have done so in the case of the First Baptist Church. The reason would be its waiver of right to complain by stipulation upon the deposition, coupled with the questions asked the witness at that time by contestants.

■ From the record it is not clear whether there was consideration of the evidence of William H. Pruett when the court determined the issues and rendered judgment. We have tested the evidence as though the trial court disregarded such, as will be presumed, and have concluded that in the determination of the case as applied to Billy Graham's interest the facts impliedly found in support of the judgment were not so contrary to the greater weight and preponderance of the evidence so as to be clearly erroneous. In view thereof no reversible error as applied to Billy Graham would be shown. Furthermore, even if we err in holding waiver to exist as applied to the First Baptist Church, there would for a like reason be an absence of any reversible error as applied to it upon the same presumption, i. e., that in arriving at judgment William H. Pruett's testimony relative to transactions with the deceased was disregarded by the court.

By our discussion we have severally considered and overruled all contentions by all points of error of both the First Baptist Church of Wichita Falls, Texas, and Billy Graham.

Judgment is affirmed.